NO. 07-06-0071-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 1, 2006

_____

NADINE HAMILTON, nee NADINE LAMBERT,

Appellant

v.

SELMA P. WILSON, M.D.,

Appellee

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-527,568; HON. SAM MEDINA, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

Nadine Lambert (now Hamilton but hereinafter referred to as Lambert) appeals from a summary judgment entered in favor of Dr. Selma P. Wilson (Wilson). The latter had been sued by Lambert for damages arising from the doctor's purported negligent acts while intubating Lambert. Wilson filed a motion for summary judgment, asserting that no evidence illustrated 1) she "committed any act or omission" constituting negligence, and

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

2) any act or omission she undertook "proximately caused injury, harm, or damage to" Lambert. The trial court granted the motion. Before us, Lambert contends that it erred in doing so because she presented more than a scintilla of evidence illustrating the standard of care, its breach, and proximate nexus between the breach and her resulting injuries. We affirm.

*Standard of Review*

When reviewing a decision granting a no-evidence motion for summary judgment, we are obligated to determine whether more than a scintilla of evidence supporting the challenged element appears of record. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). More than a scintilla appears if its sum total allows reasonable and fair-minded people to differ in their conclusions *viz* the existence of the disputed fact. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). The standard of review also requires us to examine the record in a light most favorable to the non-movant, *id.*; *Alashmawi v. IBP, Inc.* 65 S.W.3d 162 S.W.3d 162, 170 (Tex. App.–Amarillo 2001, pet. denied), accept as true all evidence favorable to the non-movant, *Allen v. Connolly*, 158 S.W.3d 61, 64 (Tex. App.–Houston [14th Dist.] 2005, no pet.), indulge, in a manner favoring the non-movant, in all reasonable inferences susceptible from the evidence, *id.*, and disregard all contrary evidence and inferences. *Alashmawi v. IBP, Inc.,* 65 S.W.3d at 170. However, it must be remembered that conclusory statements, even from experts, are not sufficient to support or defeat summary judgment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *see Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (finding the affiant's statement to be conclusory because it failed to

specify factual matters such as the time, place, and exact nature of the alleged modifications). And, such statements include expressions of subjective belief lacking explanation. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex. 1996); *Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994).

We further note that to recover upon a claim of medical malpractice, the complainant must prove 1) the physician had a duty to act according to a certain standard, 2) he breached that standard, and 3) the breach proximately caused the complainant to sustain injury. *Schneider v. Haws*, 118 S.W.3d 886, 889 (Tex. App.–Amarillo 2003, no pet.). To the extent that the opinions of an expert are needed to establish these elements, *see id*. at 892-93 (recognizing that testimony from an expert may not always be needed to prove medical malpractice), those opinions must not be founded upon mere possibilities, speculation, or surmise. *Archer v. Warren*, 118 S.W.3d 779, 782 (Tex. App.–Amarillo 2003, no pet.). One must look to the basis of the opinion as opposed to the bare opinion itself. *Id.* Moreover, this is nothing more than a reiteration of the teachings of *Wadewitz, Continental, Texas-Division*, and *Brownlee*. As illustrated by the latter, conclusion or opinions without factual support fall short of being evidence. *See Brownlee v. Brownlee, supra* (stating that the proffer of a conclusion without factual support was not enough to stave off a directed verdict). With that said, we turn to the record before us.

*Application of the Foregoing Standard*

As previously mentioned, Lambert complained of acts allegedly performed by Wilson while being intubated for purposes of administering anesthesia. These acts purportedly resulted in Lambert suffering a torn esophagus. Furthermore, the standards

3

of care appearing in the record obligated Wilson 1) "to put the endotracheal tube in the trachea . . . [it] does not necessarily require you to recognize which wrong spot you've got it in or whether it's somewhere else . . . [but] requires you to recognize that it is or is not in the trachea," 2) "[e]stablish and maintain control of the patient's airway during general anesthesia," 3) "[e]stablish this control in a safe manner," 4) "[p]romptly recognize and document injuries and complications related to airway management," and 5) "[p]romptly seek appropriate treatment, if needed, for such injuries and complications." Wilson allegedly breached one or more of these standards when she 1) "[f]ailed to establish control of the airway in a safe manner," 2) "[f]ailed to recognize and document injuries and complications related to airway management," 3) "[f]ailed to seek appropriate treatment for such injuries and complications," 4) "push[ed] the 7.5 endotracheal tube down into the esophagus," 5) "plac[ed] the tube," and 6) perforated Lambert's esophagus. Implicit in all this discussion about standards of care, their breach, and Lambert's suffering of a torn esophagus is the entry of the tube into Lambert's esophagus. In other words, for her to recover, Lambert must present more than a scintilla of evidence showing that Wilson inserted a tube into Lambert's esophagus. If she cannot, then Wilson breached none of the standards of care propounded or caused Lambert to suffer the injury underlying her claim, *i.e.* a torn esophagus. And, therein lies the problem for no such evidence appears of record.

Admittedly, Wilson acknowledged that she could not discount the "possibility" that she placed the 7.5 mm tube into Lambert's esophagus. Yet, as we said in *Archer*, "opinion evidence must be based upon more than *possibilities* . . . ." *Archer v. Warren*, 118 S.W.3d at 782 (emphasis added). So, what Wilson described as a possibility is of no import.

4

So too do we recognize that Lambert's expert also addressed whether the tube entered her esophagus. Moreover, he opined, based on reasonable medical probabilities that it did. Yet, in explaining why he so concluded, he relied upon Wilson's statement (appearing in her medical report) that she encountered a "tight fit" when attempting to pass Lambert's vocal cords. In explaining what he considered to be the source of the "tight fit," the doctor stated that "[i]t is my *belief* that it was the cricopharyngeal ring of the esophagus" and that "[m]y *belief* is that the tube was in that portion of the esophagus . . . when it became too tight." (Emphasis added). Upon what evidence or facts, if any, he founded these beliefs went unmentioned, however. Nor did he cite to anything in the medical records to support his belief. In other words, his "belief" was simply that, his "belief," and lacking factual explanation, it was conclusory and constituted no summary judgment evidence. This particular expert also wrote in his report that "the fact . . . the first endotracheal tube was too large suggests that *it would deflect* from the vocal cords and enter the esophagus" but he did not state that the tube so deflected or describe how the tube could so deflect from one part of the anatomy into another. Simply put, the expert is again discussing possibilities.

Finally, that the surgeon who remedied the tear may have opined that it occurred during Wilson's intubation of Lambert is also deficient. It too is nothing more than a hypothesis without explanation.

In sum, the possibility and subjective belief that Wilson inserted an endotracheal tube into Lambert's esophagus are simply conclusions. As such, they are not evidence that proves the questioned fact. Consequently, we have no evidence that the tube entered

5

the esophagus, which, in turn, means that Lambert failed to present more than a scintilla of evidence that Wilson breached any purported standard of care.

Accordingly, we overrule appellant's issues and affirm the summary judgment.


Brian Quinn
Chief Justice