Nadine HAMILTON, Nee Nadine Lambert, Petitioner,

v.

Selma P. WILSON, M.D., Respondent.

No. 07-0164.

Supreme Court of Texas.

March 28, 2008.

Rehearing Denied May 2, 2008.

Fred Bowers, Forrest Bowers, Bowers Law Firm, Lubbock, TX, for Petitioner.

Jim Hund, Linda Ruth St. Clair Russell, Hund & Harriger, LLP, Lubbock, TX, for Respondent.

PER CURIAM.

The trial court granted a provider's no-evidence summary judgment motion in a health care liability suit, and the court of appeals affirmed. Because genuine issues of material fact preclude summary judgment, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings.

On September 16, 2003, eighty-three-year-old Nadine Hamilton was admitted to Covenant Lakeside medical center in Lubbock for back surgery. Prior to the procedure, anesthesiologist Dr. Selma Wilson was summoned to intubate Hamilton and administer general anesthesia. Dr. Wilson attempted the intubation with a 7.5mm endotracheal tube, encountered resistance, and then inserted the tube 1–2cm farther. When that tube did not reach the depth she expected, she removed it and successfully inserted one that was 7.0mm in diameter. After the surgery, a recovery room nurse extubated Hamilton and suctioned her throat. Hamilton later complained of chest pain, and x-rays indicated that air was entering Hamilton's chest cavity. It was then discovered that Hamilton had

suffered a tear in her esophagus. That night, Hamilton was transferred to another hospital where she successfully underwent emergency corrective surgery by Dr. Donald Robertson, a thoracic surgeon. Hamilton filed a health care liability claim against Dr. Wilson, alleging that she negligently tore Hamilton's esophagus during intubation by forcing the endotracheal tube into her esophagus after encountering resistance.

Dr. Wilson moved for summary judgment, arguing that there was no evidence that she was negligent or that she caused the esophageal tear. Hamilton responded with portions of the depositions of the designated testifying experts (Dr. Robert Finnegan on behalf of Hamilton, Dr. Byron Brown for Dr. Wilson), her medical records, and Dr. Wilson's own deposition. Dr. Finnegan testified that the intubation probably caused the tear in Hamilton's esophagus, and Dr. Wilson and Dr. Brown admitted this was possible. The trial court granted the motion, and the court of appeals affirmed. 223 S.W.3d 535. Hamilton argues that the court of appeals erred in concluding that there was no evidence that Dr. Wilson negligently tore Hamilton's esophagus. We agree.

■ In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the claims for which the non-movant would bear the burden of proof at trial. Tex.R. Civ. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." Tex.R. Civ. P. 166a(i) cmt.—1997. We review a no-evidence summary judgment for evidence that would enable reasonable and

fair-minded jurors to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005).

In applying this standard, the court of appeals noted that, to recover for medical malpractice, the complainant must prove: 1) the physician had a duty to act according to a certain standard, 2) she breached that standard, and 3) the breach proximately caused the complainant to sustain injury. 223 S.W.3d at 537; *see IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). After reviewing the acts allegedly performed by Wilson, the court of appeals concluded that the mere possibility and "belief" by Dr. Finnegan that Wilson inserted an endotracheal tube into Lambert's esophagus was "not evidence that proves the questioned fact." 223 S.W.3d at 538.

■ However, Hamilton was not required to prove the facts as she alleged them. Rather, she was only required to provide evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. After examining the evidence on each of the required elements, we conclude that she met this burden.

In his expert report, Dr. Finnegan set out the general standard of care for an anesthesiologist placing an endotracheal tube. She must: a) establish and maintain control of the patient's airway during general anesthesia; b) establish this control in a safe manner; c) promptly recognize and document injuries and complications related to airway management; and d) promptly seek appropriate treatment, if needed, for such injuries and complications.

Hamilton contends that certain diagnostic tests (breath tests, $CO_2$ tests, and use of a pressure bag) should have been used to determine if the 7.5mm tube was in the esophagus and not the trachea before Dr. Wilson attempted to pass the tube after

encountering a tight fit. Dr. Finnegan noted that the tests take only ten to fifteen seconds and suggested that it was proper to use these measures to determine if the tube is in the airway and not the esophagus. Dr. Wilson's expert, Dr. Brown, disputed that breath tests should be used in this manner. But Dr. Finnegan noted that factors like the "[a]bsence of breath sounds, absence of CO2 trace, [and] watching the stomach move instead of the chest wall" were measures he had used previously to determine if a tube was in the wrong location in previous intubations. Indeed, ultimately Dr. Wilson did use breath sounds to verify the placement of the second, smaller 7.0mm tube in Hamilton's trachea.

The available testimony provides some evidence of a breach of the applicable standard of care. Dr. Finnegan testified that Dr. Wilson violated the standard of care by improperly calculating the tube's location. When asked in what respect Dr. Wilson breached the standard of care, Dr. Finnegan responded: "pushing the 7.5 endotracheal tube down into the esophagus."

Dr. Wilson testified that she inserted the tube in farther after encountering resistance. And Dr. Finnegan testified that Dr. Wilson failed to ascertain whether the tube was positioned properly. Dr. Finnegan also concluded that Dr. Wilson's manipulation of the 7.5mm tube caused Hamilton's esophageal tear, and Dr. Wilson and Dr. Brown conceded that was possible. The implication is that breath tests, rather than feel alone, should have been performed to ensure proper placement in the trachea before Dr. Wilson pushed the 7.5mm tube in farther.

We have held that conclusory statements, even from experts, are not sufficient to support or defeat summary judgment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997); *see also Bur-*

*row v. Arce*, 997 S.W.2d 229, 235 (Tex.1999)(holding that "it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness."). Dr. Finnegan's testimony, however, was not based on mere possibilities, speculation, or surmise. His opinion that the intubation caused the injury was based on: 1) the location of the tear in relation to where the 7.5mm tube would have been when it was pushed in by Dr. Wilson; 2) his review of the medical records indicating that the tear was "probably related to intubation at the time of surgery;" and 3) his impression that the "tight fit" encountered by Dr. Wilson was the cricopharyngeal ring of the esophagus. Further, although Dr. Wilson proffered her alternative theory for how the tear occurred (during suctioning of Hamilton's throat during extubation), her own testimony that she pushed the 7.5mm tube in 1–2cm farther even after encountering a "tight fit" could support Dr. Finnegan's conclusion.

The basis for Dr. Finnegan's testimony stands in contrast to the attorney in *Burrow v. Arce* who, when sued for malpractice, offered only a perfunctory affidavit swearing innocence to defeat summary judgment. *Burrow*, 997 S.W.2d at 235. Here, Dr. Finnegan's opinion was based on factual evidence relating to Dr. Wilson's care of Hamilton and thus, in conjunction with Dr. Wilson's testimony and the medical records, creates a genuine issue of material fact. As a result, we conclude that reasonable and impartial jurors could differ in their conclusions as to what caused the tear in Hamilton's esophagus and that summary judgment was therefore improper; Hamilton produced evidence sufficient to raise genuine issues of materi-

al fact on each of the elements she would be required to prove at trial.

We therefore grant the petition for review and, without hearing argument, reverse the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with this opinion. TEX.R.APP. P. 59.1 and 60.2(d).