COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-188-CV

 

 

PAUL FRIEDMAN AND                                                        APPELLANTS

SUSAN
FRIEDMAN                                                                               

 

                                                   V.

 

THE
GLADNEY CENTER AND                                                 
APPELLEES

THE PARTY DOING BUSINESS
AS

EDNA GLADNEY CENTER

 

                                              ------------

 

            FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In four issues, Appellants Paul and Susan
Friedman (APaul,@ ASusan,@ and
collectively, AFriedmans@)
challenge the trial court=s order granting summary
judgment for Appellees, The Gladney Center and The Party Doing Business as Edna
Gladney Center (collectively AGladney@).  Specifically, the Friedmans claim that a
genuine issue of material fact exists as to both their negligence and fraud claims.  We affirm.

II. 
Factual and Procedural History

In 1979, Paul and Susan applied to Gladney, a
private adoption agency, for an infant to adopt and raise as their own.  During a pre-placement office interview, the
Friedmans discussed the child they would like to have.  The conversation is reflected in the notes
taken by a Gladney case worker:

Mr. and Mrs. Friedman are
accepting of a baby of either sex.  They
have asked that we not consider them for twins or a baby that is not similar to
the nationality of their own.  They are
accepting of a planned outside delivery, a baby with a minor correctible [sic]
problem and are not concerned with the age of the biological mother.  They are not accepting of a baby with a major
problem.  They are not accepting of
epilepsy or juvenile diabetes in the medical background of an infant but are
accepting of senile diabetes, allergies and asthma.  They are accepting of marijuana
experimentation and showed a great deal of hesitancy toward any other drug
experimentation, particularly if it is after conception of a child.  They are accepting of an unknown
father.  They have asked that we not
consider them for an infant whose biological mother is schizophrenic or where
there is a family member who is schizophrenic. [Emphasis added.] [2]








On September 27, 1979, a mother in the Gladney
program gave birth to a boy.  Shortly
thereafter, the Friedmans adopted the child and named him Mark.  According to the Friedmans, Gladney told them
that there was no evidence of psychological or emotional problems in Mark=s birth
parents.  However, from an early age,
Mark was defiant towards the Friedmans and exhibited rage, anger, and an
unwillingness to cooperate.  Various
doctors diagnosed Mark with major depression, impulse control disorder, ADHD,
dysgraphia,[3]
and a difficulty with processing visual sensory input.








In 1993, as a result of Mark=s severe
psychological and behavioral issues, the Friedmans sent a letter to Gladney
requesting any additional information they might have on Mark.[4]  In response, Gladney provided the Friedmans
with Mark=s hospital notes.  Then, in August 2006, after receiving
permission from Mark=s birth mother, Gladney provided
the Friedmans with the birth mother=s
counseling records that had been in Gladney=s
possession since 1979.

The Friedmans sued Gladney for fraud and
negligence in February 2007, claiming that if Mark=s birth
mother=s
records had been disclosed to them in 1979, they never would have adopted
Mark.  In response to the Friedmans= claims,
Gladney filed a motion for summary judgment on both traditional and no evidence
grounds.  In its traditional motion,
Gladney moved for summary judgment on the ground of limitations.  In its no evidence motion for summary
judgment, Gladney argued that the Friedmans had no evidence of duty, breach of
duty, or causation.  The trial court granted
Gladney=s motion
in its entirety and dismissed the Friedmans= claims
with prejudice. This appeal followed.

III. 
Summary Judgment








Here, the trial court=s order
granting summary judgment does not specify the basis for its ruling.  Therefore, because Gladney moved for summary
judgment on both traditional and no evidence grounds and the trial court did
not specify the grounds on which it was granted, we will uphold the summary
judgment if any one of the grounds advanced in the motion is meritorious.  Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i). 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellant failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.  Id.

A.  No Evidence Summary Judgment Standard of
Review








After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no evidence summary judgment for evidence that would enable reasonable and
fair-minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005)).

1. 
Negligence








In Gladney=s no
evidence motion for summary judgment, it alleged that the Friedmans offered no
evidence of duty, breach of duty, or causation to support their negligence
claim.[5]  Specifically, according to Gladney=s no
evidence motion for summary judgment, the Friedmans failed to identify any
regulation, statute, internal policy, or standard of care that would have
required, or created a duty for, Gladney to disclose Mark=s birth
mother=s
counseling records to the Friedmans at the time of the adoption.  In response, the Friedmans argued that
Gladney=s duty
arose when they departed from the standard of care.  The Friedmans claimed that a reasonable
adoption agency, under the same or similar circumstances, would not have told
the Friedmans that they had all the information when, in fact, they did not.

On appeal, Gladney reemphasizes that the
Friedmans failed to offer any evidence showing that Gladney had an affirmative
duty to disclose the birth mother=s
records to the Friedmans.  Based on the
record before us, we agree.








The Friedmans failed to provide any summary
judgment evidence in their response regarding the standard of care at the time
of Mark=s
adoption and therefore failed to produce evidence that Gladney departed from
that standard of care.  Furthermore, the
Friedmans failed to identify any licensing requirement, regulation, statute, or
internal policy in existence at the time of the adoption that would have
required Gladney to disclose Mark=s birth
mother=s
counseling records to them based upon the Friedmans=
specifications at the time of the adoption, or in their 1993 request.  Therefore, because the Friedmans did not
provide any summary judgment evidence as to Gladney=s duty,
we overrule the Friedmans= third issue.[6]

2.  Fraud








Gladney further alleged in its no evidence motion
for summary judgment that the Friedmans failed to provide evidence of Gladney=s intent
to deceive as required in a cause of action for fraud.[7]  In response, the Friedmans produced evidence
that: 1) they had informed Gladney, before the adoption, that they were very
adamant about not having a child with any evidence of psychological or
emotional problems; 2) when Gladney notified them that there was a baby ready
for placement, they specifically asked again if there was any evidence of
psychological or emotional problems and were told by a Gladney representative
that the baby did not have any; 3) when the Friedmans went to pick Mark up from
the Gladney Center, they were handed a folder with his information and told
that the information in the folder was all the information that Gladney had on
Mark; and 4) Gladney had in its possession, since before the adoption, records
on Mark=s birth
mother.

On appeal, Gladney reasserts that the Friedmans
failed to raise a genuine issue of material fact as to Gladney=s intent
to deceive the Friedmans.  Based on the
record before us, we agree.








The Friedmans argue that Gladney=s intent
to deceive can be inferred from the fact that Gladney told them a direct
untruth as to whether there was evidence of psychological problems on the part
of Mark=s birth
mother.  They further argue that Gladney
knew at the time of the adoption that the Friedmans would not have adopted Mark
had they known the whole truth.  However,
the Friedmans failed to raise a genuine issue of material fact as to what
information in the records would have put Gladney on notice that Mark=s birth
mother had psychological problems.[8]  Instead, the Friedmans claimed only that had
they known what was in the records at the time of Mark=s
adoption, they would not have adopted him.[9]  That is not enough.  The 
question is not whether the Friedmans would have adopted Mark had they
seen the records but instead whether there was evidence that Gladney knew Mark=s birth
mother had psychological problems and therefore intended to deceive the
Friedmans by withholding the information.

Because the Friedmans failed to offer any
evidence that Gladney knew Mark=s birth
mother=s
counseling records showed a history of psychological problems, they failed to
raise a genuine issue of material fact as to Gladney=s intent
to deceive.  Accordingly, we overrule the
Friedmans= fourth issue.[10]

IV. 
Conclusion

Having overruled or otherwise disposed of all
four of the Friedmans= issues, we affirm the trial
court=s order
granting summary judgment.

 

BOB
MCCOY

JUSTICE

 

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: February 12, 2009











[1]See Tex. R. App. P. 47.4.





[2]According to the
Friedmans, however, they expressed to Gladney, on more than one occasion, that
they did not want a child whose parents had any Aemotional, psychiatric or
psychological problems@ in their
backgrounds.  [Emphasis added.]





[3]Dysgraphia is a deficiency
in the ability to write, regardless of the ability to read, not due to
intellectual impairment.





[4]The following is an
excerpt from the Friedmans= letter:

 

Our son Mark was born on September 27, 1979.  He is now thirteen and a half years old.  From the age of three, when he first started
pre-school, he has had increasing difficulties. 
His primary problem, which has been very well diagnosed by experts in
the Philadelphia area, is a major attention deficit disorder.  Though not hyperactive at all, Mark is on a
large dosage of medication (ritalin and clonidine) daily in order to help him
succeed in school and with other areas of his life.  During his very early years of education, we
went from school to school until the problem was finally diagnosed. . . .  He is experiencing great difficulties.  We are seeking any kind of help we can find.
. . .  If you have any information at all
that has been added to Mark=s records by his birth parents, we would very
much appreciate you sharing it with us.





[5]The elements of a
negligence cause of action are the existence of a legal duty, a breach of that
duty, and damages proximately caused by the breach.  See IHS Treatment Ctr. of Desoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).





[6]Because we determine that
Gladney did not have a duty to disclose the birth mother=s information to the
Friedmans, we need not address the Friedmans= second issue pertaining to causation.  See Tex. R. App. P. 47.1.





[7]The elements for a fraud
cause of action are that: (1) a material representation was made; (2) it was
false; (3) the speaker knew it was false when made or made it recklessly
without any knowledge of the truth and as a positive assertion; (4) he made it
with the intention that it be acted upon by the other party; (5) the party
acted in reliance upon it; and (6) there were damages.  See T.O. Stanley Boot Co. v. Bank
of El Paso, 847 S.W.2d 218, 222 (Tex. 1992).





[8]Gladney, on the other
hand, designated three experts that pointed to evidence in the record that the
birth mother=s psychological testing
and personal counseling notes do not indicate any form of psychopathology.





[9]The Friedmans= argument centered mainly
around Mark=s birth mother=s MMPI results.  Specifically, Paul claimed that Aif we had seen the MMPI,
regardless of any other person seeing the MMPI, we definitely would not have
adopted Mark.@





[10]Because we determine that
the Friedmans failed to offer any evidence of a genuine issue of material fact
as to their negligence and fraud claims, we need not address the Friedmans= first issue pertaining
to limitations.  See Tex. R. App.
P. 47.1; Ford Motor Co., 135 S.W.3d at 600.