Opinion issued June 3, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00783-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JOHN EDWARD MAHER, Appellant

 

V.

 

PS TEXAS HOLDINGS, LTD., PS TEXAS PROPERTIES, LTD.,
AND PUBLIC STORAGE, INC., Appellees

 

 



On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2008-44192

 

 



MEMORANDUM OPINION

          The
trial court granted summary judgment in favor of PS Texas Holdings, Ltd., PS
Texas Properties, Ltd., and Public Storage, Inc. (collectively, “Public
Storage”), on John Maher’s claims for breach of contract and for violations of
the Self-Storage Lien Act and Deceptive Trade Practices Act.  On appeal, Maher contends that the trial
court erred in granting summary judgment on his breach of contract claim because
he presented summary judgment evidence that raises a fact issue on whether (1) Maher
performed or tendered performance under the contract; (2) Public Storage breached
the contract; and (3) Maher incurred damages as a result of Public Storage’s alleged
breach.  We hold that Maher’s affidavit
raises a fact issue on each of the three challenged elements.  We therefore reverse and remand for further
proceedings.

Background

In April 2000, Maher and Public Storage
entered into a contract which authorized Maher to use Public Storage’s
facilities to store personal property. 
The contract required Maher to pay monthly rent “without deduction,
prior notice, demand or billing statement,” and the agreement continued on a
month-to-month basis until terminated by either party.  In addition, if payment is not made by the
tenth of the month, the contract provides that Public Storage may assess a ten
dollar late fee.  According to Maher, in
February 2008, instead of mailing an invoice for the upcoming March rental
payment, Public Storage called him as a reminder.  Maher “immediately” mailed Public Storage a
check for both March and April rent.

In early April, Maher received an
invoice, which included two unpaid late fees on his account.  Maher called Public Storage to resolve the
matter, attempting to explain that his last check covered rent for both March
and April, but the Public Storage representative was uncooperative and verbally
abusive, and told Maher that he would pay what Public Storage told him to pay
or it would sell his property.  Two days
later, Public Storage locked Maher out of his storage unit, notified him that it
had seized and placed a lien on his property, and added a twenty-five dollar lien
fee to his account.  Maher continued
calling Public Storage throughout April to resolve the dispute, but Public
Storage never responded.

After Maher mailed a letter to Public
Storage in late April requesting that it contact him to address the dispute,
Public Storage notified him of additional late fees and lien fees, stated that
it would no longer mail invoices to him, and told Maher that his account was
under review for termination.  Public
Storage removed a fifty dollar lock Maher had placed on the unit, began
charging rent for a courtesy lock, and increased his regular rental rate.  In early July, Public Storage informed Maher
that it would sell his property at a public auction on July 24.

On July 23, Maher sued Public Storage
for breach of contract and for violations of the Self Storage Lien Act and
Deceptive Trade Practices Act, and applied for a temporary restraining order to
prevent Public Storage from selling his property.  The trial court granted the restraining
order, and Maher hired movers to remove his property from the storage unit.

Public Storage moved for a no-evidence
summary judgment on all of Maher’s claims and moved for a traditional summary
judgment on its breach of contract counterclaim against Maher.  Public Storage contended that Maher presented
no evidence that:  (1) he performed,
tendered performance, or was excused from performing his contractual
obligations; (2) Public Storage breached the rental agreement; and (3) Maher
incurred damages as a result of Public Storage’s conduct.  In support of its traditional summary
judgment motion, Public Storage attached the rental agreement with Maher, as
well as the “Customer Transaction Journal” for Maher’s account.  The account records demonstrate that Maher
missed his March 2008 rental payment and Public Storage assessed a ten dollar
late fee.  On March 15, Maher made a
double payment of $154, which would ordinarily satisfy his rental obligation
for both March and April.  Maher’s
payment did not, however, account for the ten dollar late fee.  As a result, as of April 1, Maher had a ten dollar
balance and Public Storage charged Maher an additional ten dollar late
fee.  Public Storage agreed to write off
one of the late fees, and thus at the end of April, its records indicated that
Maher still owed Public Storage ten dollars. 
Maher did not pay rent for May, and after assessing an additional late
fee for the May rent, Public Storage also assessed a lien fee on June 1.  Maher also did not pay rent for June or July,
when his rental rate increased, and thus at the time Maher obtained the restraining
order and removed his possessions from the unit, Public Storage’s records
indicated that he owed $296.

In response, Maher relied upon his
affidavit and Public Storage’s account records to create a fact issue on the
three challenged elements of his breach of contract claim.  Maher contended that the records
“affirmatively show[ed]” that Maher was not in default when Public Storage
locked him out of the unit because the records reflected that Maher paid his
April rent in advance, and the “disputed $10 late fee was resolved in Maher’s
favor,” and thus Maher’s April balance was zero.  Maher averred that, as a result of Public
Storage’s conduct, he (1) paid fifty dollars for a lock that Public Storage cut
off of his unit, (2) hired an attorney to sue Public Storage and obtain a
temporary restraining order to prevent the sale of his property, and (3) hired
a moving company to remove his property from the storage unit.

The trial court granted summary
judgment on all of Maher’s claims in favor of Public Storage.  Public Storage non-suited its counterclaim
against Maher for breach of contract and the trial court signed a final order
of dismissal.  After the trial court
denied Maher’s motion for new trial, Maher appealed the trial court’s grant of
Public Storage’s no-evidence summary judgment motion on his breach of contract
claim.

Discussion

Standard of Review

          We
review de novo the trial court’s ruling on a motion for summary judgment.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  After an adequate time for
discovery, a party may move for no-evidence summary judgment if no evidence exists
of one or more essential elements of a claim or defense on which the adverse
party bears the burden of proof at trial. 
Tex. R. Civ. P. 166a(i); Hamilton v. Wilson, 249 S.W.3d 425, 426
(Tex. 2008).  The trial court must grant
a no-evidence summary judgment motion unless the non-movant produces competent
summary judgment evidence that raises a genuine issue of material fact on each
element specified in the motion.  Tex. R. Civ. P. 166a(i); Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 582 (Tex. 2006).  To determine if
the non-movant raised a fact issue, we review the evidence in the light most
favorable to the non-movant, crediting favorable evidence if reasonable jurors
could do so, and disregarding contrary evidence unless reasonable jurors could
not.  See
Fielding, 289 S.W.3d at 848 (citing City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).

Maher’s Breach of Contract Claim

          Maher
contends that the trial court erred by granting summary judgment because
Maher’s affidavit raises a fact issue on the three elements of Maher’s breach
of contract claim Public Storage challenges. 
The essential elements of a breach of contract claim are (1) a valid
contract exists; (2) the plaintiff performed or tendered performance; (3) the
defendant breached the contract; and (4) the plaintiff incurred damages as a
result of the breach.  Bank of Tex. v. VR Elec., Inc., 276
S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  In its no-evidence summary judgment motion,
Public Storage acknowledged that a valid contract existed between the parties,
but it challenged the remaining three elements of Maher’s breach of contract
claim, contending that Maher could not produce evidence that (1) he performed,
tendered performance, or was excused from performance; (2) Public Storage
breached the contract; and (3) Maher incurred damages as a result of Public
Storage’s alleged breach.

          As
evidence that Public Storage performed under the rental agreement and Maher
breached the contract, Public Storage attached its “Customer Transaction
Journal” for Maher’s account.  Public
Storage points to these account records as evidence that Maher did not timely
pay his rent for March, incurred a late fee as a result, and although Maher ultimately
paid rent for both March and April, he never paid the late fee assessed in
March, and thus was delinquent under the rental agreement.  If a no-evidence summary judgment motion attaches
evidence, the trial court should consider that evidence only if it creates a
fact question.  See Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004).  Maher relied upon Public Storage’s account
records in his summary judgment response, contending that the records
“affirmatively show that Maher was not in default when Defendants locked him
out of his storage space.”  Because
Maher’s response relied upon the evidence attached to Public Storage’s
traditional motion, this evidence was properly before the trial court, and we
may consider this evidence in determining whether Maher raised a fact issue on
his performance and Public Storage’s breach of the contractual obligations.

The Public Storage account records
indicate that, on February 15, 2008, Public Storage mailed Maher an invoice for
the March rental payment, seventy-seven dollars, which he did not timely
pay.  As a result, Public Storage
assessed a ten dollar late fee.  On March
14, Public Storage called Maher about his March rent and the next day, Public
Storage received a check from Maher for $154, equivalent to two months’
rent.  Public Storage applied this check
to the March rent and the late fee, and it credited the remaining sixty-seven
dollars to Maher’s April rental payment, which left a balance of ten
dollars.  Maher did not pay this amount,
and as a result, in early April, Public Storage assessed an additional ten
dollar late fee and locked Maher out of the unit.  At Maher’s request, Public Storage removed
the late fee assessed in April, but a ten dollar balance remained on Maher’s
account.  Maher did not make any
subsequent payments to Public Storage, and owed Public Storage $296 as of July
11, 2008.

In his summary judgment response,
Maher relied upon the account records and stated that the records
“affirmatively show that Maher was not in default when [Public Storage] locked
him out of his storage space,” because Maher prepaid the April rent and the
“disputed $10 late fee was resolved in Maher’s favor.”  In his affidavit, Maher states that, in
February 2008, Public Storage failed to mail an invoice for March, but instead
called Maher to remind him of his rental payment.  Maher then “immediately” mailed a check for
two months’ rent to Public Storage.  During
the first week of April, Maher received an invoice indicating two late fees,
and after Maher attempted to explain the issue to an uncooperative Public
Storage employee, Public Storage locked him out of the unit and placed a lien
on his belongings.  Maher’s assertion
that he received the phone call in February and “immediately” mailed a check
for his March and April rental payments raises a reasonable inference that
Maher timely paid rent for March, and conflicts with the Public Storage record
which notes that the phone call and payment occurred in mid-March.  Therefore, Maher’s affidavit raises a fact
issue that the late fee assessed in March was erroneous, and Maher should not
have had a balance on his account on April 1.

On appeal, Public Storage contends
that Maher’s “self-serving” and “conclusory” affidavit does not raise a fact
issue on any of the challenged elements. 
An uncontroverted, self-serving affidavit from an interested witness may
serve as the basis for granting summary judgment only if the evidence is
“clear, positive, direct, otherwise credible, free from contradictions and
inconsistencies, and could have been readily controverted.”  Trico
Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997) (citing Republic Nat’l Leas. Corp. v. Schindler,
717 S.W.2d 606, 607 (Tex. 1986)); Tex.
R. Civ. P. 166a(c).  Similarly, an
affidavit that states only legal or factual conclusions is not proper summary
judgment evidence.  See Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex. App.—Houston
[1st Dist.] 1997, no pet.); Prime Prods.,
Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 637 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (quoting Aldridge
v. De Los Santos, 878 S.W.2d 288, 296 (Tex. App.—Corpus Christi 1994, writ
dism’d w.o.j.) (holding that affidavits opposing summary judgment motions must
set forth facts that would be admissible in evidence).  The affidavit must provide the underlying
facts to support the conclusion.  See Rizkallah, 952 S.W.2d at 587; see also Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 122 (Tex. 1996) (per curiam) (“[Conclusory affidavits are neither]
credible nor susceptible to being readily controverted.”).

In his affidavit, Maher avers that he
performed under the contract and thus Public Storage wrongfully locked him out
of the unit.  Maher supports this
conclusion with facts:  Public Storage
failed to send Maher a March invoice, but instead called him about the rent in
February, and Maher immediately mailed a check to Public Storage to cover both
March and April rent.  Maher’s affidavit
states the facts on which he bases his conclusions and is therefore competent
summary judgment evidence.

Maher’s affidavit contradicts Public
Storage’s account records, upon which Maher also relies in part.  Those records support Maher’s statement that he
made the payment, but differ on the timing of it.  The right answer turns on the credibility of
the evidence, placing this dispute within the province of a jury.  When we view the evidence in the light most
favorable to Maher, we hold that Maher’s affidavit presents more than a
scintilla of evidence that Maher performed under the contract by timely paying
his March rental payment.

Public Storage next contends that
Maher failed to produce any evidence that Public Storage breached the contract
by locking Maher out of his unit because Public Storage had a legal right to
lock Maher out of the unit when he became delinquent on his payments.  The rental agreement between Maher and Public
Storage provides that Maher defaults if he fails to pay rent or fails to comply
with “any term, provision or covenant of this Rental Agreement, other than the
payment of rent.”  The rental agreement
also provides that Maher “shall have access to [the rental unit].”  Maher’s affidavit creates a fact issue on
whether he complied with his contractual obligations.  According to Maher, after he received an
invoice in early April indicating two late fees, he contacted Public Storage to
explain the problem.  Public Storage
acknowledges that it locked Maher out of his unit on April 7, two days after
Maher’s alleged attempt to resolve the matter over the phone.  If, as Maher contends, he timely paid his
March rent and prepaid his April rent, and thus any late fees assessed by
Public Storage were erroneous, Maher was not delinquent on his account when
Public Storage locked him out of his unit. 
Because Maher produced more than a scintilla of evidence that he
performed his contractual obligations, we therefore hold that Maher also
produced more than a scintilla of evidence that Public Storage breached the
rental agreement by wrongfully denying Maher access to the unit when he was not
in default.

Public Storage further contends that
Maher failed to produce any evidence that he suffered damages as a result of a
breach by Public Storage.  Specifically,
Public Storage contends that Maher’s “self-serving and conclusory” affidavit
does not “rise to a level that would enable reasonable and fair-minded people
to differ in their conclusions.” 
Although Maher’s affidavit does not state the specific amounts that he
expended on attorney’s fees and moving costs, Maher states the following:

Public Storage cut off a $50 master lock that I had
placed on the storage facility. 
Thereafter, Public Storage has been charging me rent for a ‘courtesy’
lock.  Public Storage notified me that it
intended to sell my personal belongings at public auction to be held on July
24, 2008.  The Defendants would not
return telephone calls nor would it respond to the numerous letters that I
personally delivered to it.  To prohibit
and stop the wrongful conduct of the Defendants, I was required to engage the
legal services of a licensed attorney in the state of
Texas . . . . As such, to protect my personal property
(some of which included heirlooms and professional files), I was required to file
a lawsuit and thereafter obtain a Temporary Restraining Order.  Further, I was required to get a court order
forcing Public Storage to release my personal
property. . . . Further, in order to prevent the defendants
from selling my personal property, I was compelled to hire movers on a
short-notice basis and pay them to remove my property.

 

Maher supports his conclusion that he
incurred damages as a result of Public Storage’s conduct by specifically
stating the actions he took after Public Storage threatened to sell his
property.  See Rizkallah, 952 S.W.2d at 587; see also Bowen v. Robinson, 227 S.W.3d 86, 96 (Tex. App.—Houston
[1st Dist.] 2006, pet. denied) (stating that normal measure of damages for
breach of contract is “just compensation for the loss or damage actually
sustained”).

          Public
Storage contends that, because Maher did not pay rent for May, June, and July,
he “effectively obtained three months of free storage space” and, by obtaining
a temporary restraining order, Maher “prevent[ed] Public Storage from
exercising its lien rights.”  Maher
acknowledges that he did not pay rent for these three months, but asserts that
he was excused from paying rent as a result of Public Storage’s breach of the
contract by locking Maher out of his unit even though he had performed his contractual
obligations.  See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195,
196 (Tex. 2004) (per curiam) (“It is a fundamental principle of contract law
that when one party to a contract commits a material breach of that contract,
the other party is discharged or excused from further performance.”).  If the fact-finder determines that Maher
performed his contractual obligations and Public Storage materially breached
the contract by locking Maher out of his unit, then Maher may assert that he
was excused from any further contractual obligations.  Public Storage may also contend that its
continued storage minimized any damages resulting from the alleged breach.  Viewing the evidence in the light most
favorable to Maher, we hold that Maher raised a fact issue on the damages he
incurred as a result of Public Storage’s alleged breach of the rental
agreement.

Conclusion

We hold that Maher’s affidavit,
presented in response to Public Storage’s no-evidence summary judgment motion,
raises a fact issue on Maher’s breach of contract claim.  We therefore reverse and remand for further
proceedings.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Sharp.