**Reversed and Remanded and Opinion Filed May 11, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00338-CV

**FREDERICK E. MCDONALD IV, Appellant**
**V.**
**EMILY C. MCDONALD, Appellee**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-07-09019**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Schenck
Opinion by Justice Francis

Emily C. McDonald sued her ex-husband Frederick E. McDonald IV for breach and anticipatory breach of an alimony agreement, seeking past and future payments. Frederick answered the lawsuit and asserted that a "terminating event" had ended his obligations. Shortly thereafter, the trial court granted Emily's no-evidence motion for partial summary judgment on Frederick's affirmative defense and then allowed that ruling to be used by Emily at the subsequent jury trial. At the conclusion of the evidence, the trial court directed a verdict on Emily's breach of contract claim and submitted the anticipatory breach claim to the jury, which found in Emily's favor.

The dispositive issue is whether the trial court's pretrial summary judgment ruling was error. We conclude it was. We further conclude the ruling—and how it was used later at trial—

infected the entire presentation of the case. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Emily and Frederick divorced in 2007. The agreed final decree of divorce appointed them as joint managing conservators of their only child, S.J., set out a parenting plan and detailed "parenting time" schedule, and ordered Frederick to pay child support. In addition, the agreed decree contained a contractual provision for Frederick to pay Emily alimony. The amount due each month varied by the year, but ranged in amount from $5,500 to $7,500 a month. Although the contract could last until December 2024, it also provided for termination of alimony upon the occurrence of any of five specified events. The terminating event relevant here was addressed in Paragraph 5:

> Receiving Party is not the primary caretaker in the home for the parties' child [defined as a) the child attending daycare (not including Mother's Day Out) on a regular, daily basis for more than 4 hours per day, b) the child attending full-time after school care, c) the child having a full-time nanny, or d) if anyone other than Receiving Party (relatives are considered someone other than Receiving Party) is providing daycare on a regular, daily basis for more than 4 hours per day] for a period of greater than 6 consecutive months.

Frederick agreed to secure the alimony in the event of his death by obtaining a life insurance policy in an amount not less than $500,000 and naming Emily as primary beneficiary.

Over the next six-and-a-half years, Frederick was consistently late making his alimony payments, and Emily agreed to alter the due date to accommodate him. Still, Frederick paid late. He also did not obtain the life insurance policy. The parties had also disregarded the parenting time schedule to allow Frederick more parenting time. But, by the spring of 2014, the parties could not resolve the dispute over Frederick's late alimony payments, which prompted a second dispute over Frederick's expanded parenting time. Emily suggested a "compromise" on Frederick's parenting time that was dependent on him making timely alimony payments and

obtaining the required insurance policy. If her suggestion was "unacceptable," she said they would need to "live by the decree" until a court ordered otherwise.

Frederick refused, telling Emily in an April email that there were only "2 options"— "stick with the schedule we have been using for the last 18 months or we go to court." He warned Emily not to "make a threat to me unless you are willing to go to court yourself and risk losing all the money you get every month and having to go back and work full time."

Frederick paid alimony in April, albeit two days' late, and was current on his payments. His May payments were due on the 10th and 20th. When Frederick failed to pay, Emily sued him on May 21 for breach of contract and anticipatory breach, alleging he had "demonstrated a clear, present, and unconditional intention not to timely pay the remaining installments of contractual alimony due under the agreement[.]" At that point, Frederick stopped paying alimony altogether, asserting "his obligation to pay contractual alimony . . . was permanently terminated in compliance with the terms of the contract."

One month after the suit was filed, the trial court held a pretrial conference and set the case for trial on October 6. The court ordered discovery completed on or before thirty days before trial and set deadlines to mediate, file witness and trial lists, and submit a proposed jury charge.

The parties served and answered discovery, and each objected to much of the other parties' requests. Once Frederick provided his responses, Emily moved for a "No-Evidence Motion for Summary Judgment on Breach of Alimony Contract." In the motion, Emily asserted that Frederick could not produce more than a scintilla of evidence to support his defense that his alimony obligation was permanently terminated.[1]

---

[1] Emily attached discovery responses, attorney fee affidavits, and attorney billing records to her motion, and her prayer asked for past due installments of alimony, the present value of future installments, attorney's fees and court costs, and an order for Frederick to obtain the life

In his response to the motion, Frederick objected that he had not had adequate time for discovery. He asserted that Emily refused to produce relevant information and documentation regarding her employment and had failed to agree to any dates for depositions. Frederick said he had filed a motion to compel discovery responses, but the motion was set on a date after the summary judgment hearing. He asked the trial court to continue the hearing until it had ruled on his motion to compel.[2]

In his substantive response to the motion, Frederick asserted there was more than a scintilla of evidence to show that Emily is not the primary caretaker of S.J. as defined in the decree because S.J. was in full-time, after-school care. As evidentiary support, he attached the affidavit of his wife, Margaret, a possession calendar she had compiled, and Emily's banking records. In her affidavit, Margaret asserted S.J. consistently, after dismissal from school, attended "full time after school care" at Iarov Elite Gymnastics (IEG). Margaret provided details of S.J.'s schedule and attached copies of calendars from August 2013 through June 2014 that identified the days and times S.J. was at the gymnastics facility or in the care of others. The evidence showed that S.J., while in second grade, was released from school at 3:15 p.m., went to IEG four days a week at either 4, 4:30, or 5:30 p.m., and stayed until 6:30, 7, or 8 p.m. In the fall semester, S.J. was at IEG for about nine hours over the four days; in the spring semester, the time jumped to twelve hours.

Finally, Margaret attested that, based on her understanding of Emily's work schedule, work travel schedule and attached calendars, Emily was working "the equivalent of a full time work schedule[.]" She also attested that other individuals, including she and her husband,

---

insurance policy. None of these issues was appropriate for review on Emily's no-evidence motion, and the record does not indicate the trial court ruled on any of these issues.

[2] The record shows Frederick received at least some of the employment information prior to the summary judgment hearing. He filed a motion to late-file evidence, which was granted, but did not file any additional evidence.

Emily's relatives, other children's parents, a nanny, and gymnastics coaches, have provided care for S.J. after school on a consistent and continued basis.

Emily did not file a reply or object to the response. Following a hearing, the trial court granted the no-evidence motion on Frederick's affirmative defense. When the trial began eleven days later, the jury was told almost immediately about the summary judgment ruling, despite Frederick's objections that it was an impermissible comment on the weight of the evidence given that he needed to be able defend the anticipatory breach claim and explain why he stopped making the payments. The trial court, however, took the position the ruling and/or order was "not a comment" but was a "pleading" that was a "public document." So, the jury was told numerous times—by both the trial judge and counsel—that the judge had ruled Frederick did not have "an excuse" for not making payments. The ruling was reiterated in Emily's opening statement, in her questioning of Frederick, and in closing argument. And, the written order was admitted as evidence.

At the conclusion of the evidence, the trial court directed a verdict on Emily's breach of contract claim and submitted the anticipatory breach claim to the jury. After deliberating, the jury found Frederick had anticipatorily breached the alimony agreement and awarded Emily $693,000 in damages as well as $42,953.34 in attorney's fees. All post-judgment motions were overruled by operation of law, and Frederick appealed.

In seven issues, Frederick complains of the trial court's pretrial partial summary judgment ruling against him on his affirmative defense, the failure to continue the summary judgment hearing and the trial, the admission of the pretrial ruling at trial, the directed verdict on breach of contract, the legal and factual sufficiency to support the jury's findings of anticipatory breach and damages, and the award of attorney's fees. Because the summary judgment ruling is dispositive and impacts the remaining issues, we begin with it.

No-evidence summary judgments are governed by rule 166a(i). *See* TEX. R. CIV. P. 166a(i). After an adequate time for discovery has passed, a party without the burden of proof can move for summary judgment on the ground that the nonmovant has no evidence of one or more essential elements of a claim or defense for which the nonmovant would bear the burden of proof at trial. *Id*. The movant need not present summary judgment evidence, but the motion must specifically state the element or elements for which there is no evidence. *See Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 286 (Tex. App.—Dallas 2013, pet. denied) (en banc).

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton*, 249 S.W.3d at 426. We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426.

In his first issue, Frederick challenges the trial court's granting of the no-evidence summary judgment on his affirmative defense. He asserts he presented more than a scintilla of evidence to show that Emily was not S.J.'s "primary caretaker" as defined in the divorce decree. We agree.

As set out previously, the contractual alimony payments terminate immediately if Emily is not the primary caretaker of S.J. for a period of greater than six consecutive months. The

contract defines primary caretaker. As relevant here, Emily is not the primary caretaker if the child is attending "full-time after school care." "After school care" is not defined.

Margaret's affidavit attests S.J. is in "full time after school care" at a gymnastics facility on a consistent basis following dismissal from school. Her affidavit and accompanying calendar shows S.J. went to the facility four days a week during her second-grade year, from September 2013 through May 2014 (and then continued in the summer and the new school year that started just before the summary judgment hearing). On those four days, the evidence showed S.J. got out of school at 3:15 p.m., went to IEG for 2 to 3 1/2 hours depending on the day, and would get home after 7 p.m. (For example, from January through March of the 2014 spring semester, S.J. was at IEG from 4:30 to 8 p.m. on Mondays, 5:30 to 8 p.m. on Tuesdays, 4:30 to 7:30 p.m. on Thursdays, and 4 to 7 p.m. on Fridays. In April and May, she went from 4 to 7 p.m., on four weekdays.)

Emily nevertheless contends that Frederick's argument requires this Court to accept the premise that "attending competitive gymnastics qualifies as 'full-time after school care[.]'" Assuming her contention is relevant, there is no summary judgment evidence that S.J. was in "competitive gymnastics" and Emily's argument at the summary judgment hearing is not evidence. Further, in her brief, Emily acknowledges that her no-evidence motion "did not request a determination gymnastics did not qualify as full-time after-school care or daycare, as a purely legal issue, nor did the Order issued by the trial court make this finding as a basis for its ruling."

Emily also argues that Frederick's evidence does not establish Emily was absent from S.J.'s gymnastics activities and "such evidence would be necessary to create a fact issue as to whether it was 'full-time after school care.'" She directs us to Emily's counsel's argument at the summary judgment hearing that "[a]nd by the way, our client attends the gymnastics practices on

a fairly regular basis." Again, argument at summary judgment is not evidence. Additionally, while the affidavit does not specifically say Emily was not present, a reasonable inference exists that she was not, particularly in light of the appropriate standard of review and Margaret's attestations that Emily was working full time and S.J. was attending full-time after school care at a gymnastics facility.

Frederick was not required to "marshal all his proof" and prove his case conclusively; he needed to present only enough evidence that reasonable and fair-minded jurors could disagree as to whether S.J. was in full-time, after-school care. We conclude the evidence presented meets that standard. Accordingly, the trial court erred in granting the no-evidence summary judgment. We sustain the first issue.

Having concluded the no-evidence summary judgment on Frederick's affirmative defense was improper, we likewise conclude the trial court's directed verdict on Emily's breach of contract claim was error. The trial court's pretrial interlocutory ruling not only precluded Frederick from fully presenting evidence on his defense, it also denied him the benefit of jury instructions, questions, and argument on the claim. *See Associated Air Ctr. LP v. Tary Network Ltd.*, No. 05-13-00685-CV, 2015 WL 970664, at *7 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.).

The ruling was equally detrimental to Frederick as he attempted to defend Emily's allegation of anticipatory breach. The elements of anticipatory breach are (1) the defendant repudiated the obligation (2) without just excuse and (3) plaintiff was damaged from the breach. *Taylor Pub. Co. v. Sys. Mktg., Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (op. on mot. for reh'g). The jury was instructed on these elements and given the following instructions as well:

> A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future.

Repudiation is conduct showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

The intention to abandon the contract must be distinct, unequivocal, and unconditional.

There is no repudiation if the refusal to perform is based upon a genuine mistake or misunderstanding as to matters of fact and law.

From the start of the trial to its finish, the jury was repeatedly told the trial court previously ruled that Frederick had "no excuse" for breaching the contract, from both Emily's counsel and the judge herself. Beginning with opening statement, Emily informed the jury that "the court has already ruled that there was no excuse in the contract for him not making the payments." In particular, her counsel told the jury:

> Now, this back and forth you just heard on the issue of repudiation, there's disagreement amongst us, but on the issue of repudiation, some of the same facts that he raised during that proceeding on the Motion for Summary Judgment may be raised. I'm sure I'll object when they are, but what matters is, you know that the Court has already ruled on whether he had an excuse or not to stop paying, and they [sic] ruled that he did not.
>
> * * *
>
> Once the judge ruled that the contract itself did not excuse him from making the payments, he could have resumed making the payments. He could have caught up the payments - - the back payments. He simply has chosen not to.
>
> He has unilaterally decided that he has the ability to preempt this Court and to preempt you . . . .

In a second opening statement used to rebut Frederick's opening statement,[3] Emily again tied the summary judgment ruling to the anticipatory breach, stating:

> The Court's told him he was not excused from making the payments. They told him back on, I believe, the 25th of last month. There's been an alimony payment come due since then. Even knowing that he's not excused legally by the contract, even though the judge has told him that, he still hasn't made a payment of alimony.

---

[3] The trial judge allowed Emily's attorney, over Frederick's objection, to rebut Frederick's opening statement. Although Frederick complained about this ruling in his motion for new trial, he has not brought this complaint on appeal.

He's just going to do what he damn well pleases, and that's the problem with this, and his actions can be considered in determining whether he is repudiating the contract. . . .

During Emily's case-in-chief, she testified "the Court has ruled that there's no evidence that terminated the obligation to pay alimony." When she called Frederick as an adverse witness, the summary judgment ruling became a centerpiece of her questioning of him on his "excuse" for not making payments:

> [EMILY'S COUNSEL]: And you've made no alimony payments since [April 2014] of any kind?
>
> [FREDERICK]: No, no alimony payments.
>
> [EMILY'S COUNSEL]: And when the Court ordered, in this case, that you were not excused from paying the alimony, did you then go ahead and say, okay, and pay the alimony?
>
> [FREDERICK]: No. I'm allowed to disagree with the - - disagree with the Court.
>
> [EMILY'S COUNSEL]: Okay. I understand you're allowed to disagree. The question may be, are you allowed to disregard a court's order? Do you think you are?
>
> [FREDERICK]: No.
>
> [EMILY'S COUNSEL]: And yet you haven't paid the money after the Court's ruled that you don't have an excuse.
>
> [FREDERICK]: There hasn't been a final ruling in this case.
>
> [EMILY'S COUNSEL]: Okay. After the court made the ruling that you were not excused from making the alimony payments, in effect, that you were still obligated to make the alimony payments, did you make the next alimony payment when it came due?
>
> [FREDERICK]: No, because the case is still - - the trial is still ongoing. The case is ongoing.
>
> [EMILY'S COUNSEL]: Object, nonresponsive.
>
> [TRIAL COURT]: Sustained.
>
> [EMILY'S COUNSEL]: A Court has told you that you don't have an excuse, under the contract, to not make the payments, you understand that?
>
> [FREDERICK]: I understand what you're saying, sir.

Later, during questioning by his own counsel, when Frederick attempted to explain why he believed the contract had been terminated, Emily's counsel objected that unless the jury was reminded "that this is only as to the issue of repudiation[,] that this is exactly the subject of the Motion for Summary Judgment wherein you held that this provision, nothing about it or my client's behavior amounted to a termination of the alimony obligation." At that point, the trial court asked whether the order itself had been admitted into evidence and learned it had not. After explaining the motion was the "subject" of a previous hearing and ruling, the court admitted the written order as evidence over Frederick's objection and published it to the jury.

Finally, Emily's counsel hammered the point home right before the jury began deliberating when, in closing argument, he told jurors, "I'm not sure exactly what repudiation means, but refusing to abide by the orders of a district judge has got to be pretty strong evidence that you are repudiating your obligation to pay. If he won't pay under those circumstances, what can make him? The only way to answer this problem for my client is to give her the judgment she's seeking."

The trial court's summary judgment ruling, even if it had been correct, permeated the entire trial and likely prejudiced jurors to such a degree that it would have been nearly impossible for them to consider the elements of anticipatory breach without the corresponding influence of the judge's opinion. Given that the ruling was not correct, its impact was even more devastating and complete. For example, Frederick filed a motion to compel Emily's answers to discovery related to her compensation and employment, which he contended was relevant to whether she was the primary caretaker in the home. But because the motion could not be heard until after the summary judgment hearing, the associate judge denied it as moot and Frederick was denied a merits ruling on his motion. Then, at trial, the ruling conflated the issues of "terminating event" for breach of contract and "excuse" for anticipatory breach, denied Frederick

–11–

the ability to fully present his case, and impermissibly shaped the development of the entire case, likely for both sides. *See Plano AMI L.P. v. Cruz*, No. 05-12-01480-CV, 2015 WL 128592, at *9 (Tex. App.—Dallas Jan. 9, 2015, no pet.) (mem. op.) (concluding erroneous partial summary judgment ruling infected entire trial and remand was appropriate disposition).

Under these circumstances, we conclude the entire case must be reversed and remanded for further proceedings. *See Associated Air Ctr.*, 2015 WL 970664, at *7 ("As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision); *Cruz*, 2015 WL 128592, at *9 ("Remand is appropriate when, for any reason, a case has not been fully developed, including where the trial court's action prevented the case from being properly developed and presented at trial."); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (remanding case for new trial, despite legal sufficiency issues, when sanctions ordered by trial court prevented full development of case). In doing so, we leave the issue of discovery to the trial court to resolve.

We reverse the trial court's judgment and remand for proceedings consistent with the opinion.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

150338F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FREDERICK E. MCDONALD IV,
Appellant

No. 05-15-00338-CV     V.

EMILY C. MCDONALD, Appellee

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-07-09019.
Opinion delivered by Justice Francis;
Justices Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Frederick E. McDonald IV recover his costs of this appeal from appellee Emily C. McDonald.

Judgment entered May 11, 2016.