

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00344-CV

MELISSA AVDEEF                                                    APPELLANT

V.

NATIONAL AUTO FINANCE                                            APPELLEE
COMPANY

----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Melissa Avdeef appeals from the trial court's summary judgment in favor of Appellee National Auto Finance Company (NAFC) on its claims against Avdeef for breach of contract and foreclosure of its security interest and against Avdeef on her counterclaims. Avdeef, who is proceeding pro se, argues in five issues that the trial court erroneously exceeded the four corners of the

---

[1]*See* Tex. R. App. P. 47.4.

contract in awarding NAFC damages and possession of the vehicle, that NAFC is no longer in business, that the trial court erred by "prejudging the case by statements made on the court record," by allowing NAFC "to violate multiple state and federal laws," and by "allowing [NAFC] to make false, misleading[,] and contradicting statements," and that the trial court failed to consider NAFC's credibility. Because we hold that the trial court did not err by granting summary judgment, we affirm.

NAFC sued Avdeef to recover the balance due on a motor vehicle retail installment contract entered into by Avdeef. NAFC asserted that in 2004, Avdeef purchased a vehicle from Meador Chrysler/Plymouth and at the same time executed the retail installment contract, which gave Meador a security interest in the vehicle. NAFC further claimed that it had purchased the contract from Meador and that Avdeef was now in default of the contract. It asserted a claim for breach of contract and sought to foreclose on its security interest. NAFC also stated that it was the registered assumed name for Nuvell National Auto Finance LLC.

Avdeef filed a counterclaim asserting that NAFC was "not a permissible company to do business in the State of Texas" and was no longer the lien holder. She further asserted that NAFC had violated the federal Fair Debt Collection Practices Act (FDCPA).

After a hearing, the trial court granted summary judgment for NAFC. The judgment ordered that NAFC recover from Avdeef $19,792.32 plus interest and

attorney's fees, that NAFC was awarded foreclosure on its security interest in the vehicle, and that Avdeef take nothing on her counterclaims. Avdeef then appealed.

We review a summary judgment de novo.[2] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[3] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4] A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[5]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[6] The motion must specifically state the elements for which

---

[2]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[3]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[4]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[5]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[6]Tex. R. Civ. P. 166a(i).

there is no evidence.[7]  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[8]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[9]  We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.[10]  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.[11]  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[12]

---

[7]*Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

[8]*See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

[9]*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[10]*Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

[11]*Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

[12]*Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

4

Avdeef's brief does not conform to the appellate briefing rules. She divides her "Statement of Facts" into sections by issue, and in each section, she includes argument pertaining to that issue.[13] She then includes a three-page "Summary of the Argument" that, rather than summarizing the arguments relating to her issues, asserts that NAFC should be held to the rule of law but does not reference any law or legal principle by which NAFC should be held accountable. The "Argument" section of her brief consists of three pages of numbered paragraphs. Avdeef does not clearly indicate which paragraphs relate to which of her issues, and some of the paragraphs do not appear to have any relevance to her issues.

A pro se litigant is held to the same standards as licensed attorneys and must comply with rules of procedure.[14] But, in light of our obligation to liberally construe briefs,[15] we address Avdeef's arguments to the extent that they are

---

[13]*See* Tex. R. App. P. 38.1(g) (providing that the appellant's brief "must state concisely and *without argument* the facts pertinent to the issues or points presented").

[14]*Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Williams v. Capitol Cnty. Mut. Fire Ins. Co.*, 594 S.W.2d 558, 559 (Tex. Civ. App.—Fort Worth 1980, no writ).

[15]*See* Tex. R. App. P. 38.9.

adequately briefed and that we can understand them. To the extent that any of her arguments are unintelligible and inadequately briefed, they are overruled.[16]

In her first issue, Avdeef argues that the trial court improperly allowed NAFC to exceed the terms of the contract. She contends that the contract did not allow NAFC to both foreclose on the vehicle and be awarded damages. Avdeef argues that the trial court improperly allowed NAFC to

> wander outside of the four corners of the contract, and thus improperly granted [NAFC] possession of the motor vehicle, the value of the contract, damages, and legal fees, the law limits the collection of contractual goods to the limits specified within the contract, you get one or the other, the money owed, or the vehicle, then in turn you have to sue for the balance owed AFTER the sale of the vehicle, not double of everything, and the vehicle to boot, thus this judgment was wholly improper.

To address what we interpret as an argument that the trial court granted NAFC relief not authorized by the contract, we examine the summary judgment evidence offered by NAFC in support of its breach of contract claim, as well as any evidence offered by Avdeef in reply.

Regarding its breach of contract claim, NAFC produced a copy of the sales contract, which provided the following terms:

- a total loan amount of $29,341.44, to be repaid in seventy-two monthly payments of $407.52;

- an annual percentage rate of 12.95 percent;

---

[16]*See* Tex. R. App. P. 38.1(i); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied) (deciding that issues were waived because of inadequate briefing).

- a late charge of five percent of the scheduled payment for any payment not received within fifteen days of its due date; and

- in the event that Avdeef failed to pay all she owed when the final payment became due or if she did not pay all she owed if the seller demanded payment in full under the contract, an interest rate set at the higher rate of eighteen percent per year or the maximum rate allowed by law.

The contract further provided that if Avdeef defaulted on the contract, the seller had the right to accelerate the loan and require her to pay the remaining balance all at once. It further provided that "[i]f we [the seller] hire an attorney who is not our salaried employee to collect what you owe, you will pay any reasonable attorney's fees plus any court costs and disbursements, as the law allows."

The contract defined default to include Avdeef's failure to pay any amount when due. Finally, the contract granted to the seller a security interest in the vehicle and provided that upon default, the seller had the right to repossess the vehicle, sell it to pay allowed expenses, and use any remaining amount to reduce the amount Avdeef owed. Avdeef did not challenge these terms of the contract, either in the trial court or on appeal.

The contract shows on its face an assignment to "National Auto Finance Co." NAFC included with its summary judgment evidence an assignment from Nuvell Credit Company LLC d/b/a/ National Auto Finance Company to Nuvell National Auto Finance LLC, dated December 1, 2006. NAFC also asserted that

it was the registered assumed name for Nuvell National Auto Finance LLC,[17] and it filed as summary judgment evidence the assumed name certificate from the Texas Secretary of State showing that NAFC was the registered assumed name of Nuvell National Auto Finance LLC.

NAFC also produced a copy of Avdeef's payment schedule, showing that the last payment made by Avdeef was on September 26, 2007, and that as of that time, after applying that payment, the remaining balance owed totaled $12,951.70. This schedule shows that at the time of the assignment to Nuvell National Auto Finance LLC, Avdeef was not in default. Avdeef did not challenge this evidence, either in the trial court or on appeal.

The only part of Avdeef's response to NAFC's summary judgment motion that related to NAFC's breach of contract evidence was a paragraph in which she stated,

> [T]hey are attempting to double dip by suing for more than double what the original contract balance was, but are asking for the vehicle to be seized also. This is wholly improper for them to collect on both the contract, and the collateral, and explains why they are now improperly and fraudulently renaming the contract as "damages" in order to perpetrate this fraud upon the court.

The terms of the contract, however, allowed the seller to accelerate the loan upon default, apply an interest rate of at least eighteen percent to any outstanding balance, charge late fees, and repossess the vehicle if the full

---

[17]*See* Tex. Bus. & Com. Code Ann. §§ 71.001–.203 (West 2009) (providing for the registration of assumed business or professional names).

8

amount was not paid. Thus, from the plain terms of the contract, even if the amount owed after late fees and interest became more than the amount originally loaned, Avdeef was still obligated to pay. The seller also had the right to repossess the vehicle, sell it, apply the sale proceeds to its costs, and use any amount left to reduce the amount that Avdeef owed. In contrast to what Avdeef argued in the trial court and now on appeal, the remedies sought by NAFC were allowed under the contract.

Avdeef also asserts, without any citations to authority, that NAFC originally pursued "this legal matter" "as a debt, and not a contractual obligation, and [NAFC's] legal counsel identified [itself] as debt collectors, with the written statement that binds them to follow the rules and regulations of the federal Fair Debt Collections Practices Act . . . for which they have repeatedly violated." She contends that the trial court set an improper precedent that will allow debt collection firms to no longer be held to the contract they are attempting to enforce. She argues that "you foreclose on a debt, you enforce on a contract, yet [NAFC] did not sue on a debt."

We are unclear what specific legal argument Avdeef intended to make by these statements. To the extent that Avdeef argues that a party may not foreclose on collateral in a claim based on a contract and can only pursue that remedy by suing "on a debt," she is mistaken.[18] To the extent that she argues

---

[18]*See, e.g.*, Tex. Bus. & Com. Code Ann. § 9.601 (West 2011) (providing that after default, a secured party has the rights provided in that subchapter as

that if a company makes attempts to collect on a debt owed under a contract prior to filing a lawsuit, it may no longer sue for breach of that contract, she has cited no law in support of that position. And we note that the law often encourages parties to settle disputes prior to litigation.[19] We overrule Avdeef's first issue.

In Avdeef's second issue, she argues that the trial court erred by allowing NAFC to perpetrate a fraud upon the court, as NAFC

> is and was publicly shut down by the parent corporation and, therefore, is no longer in business, and failed to sue under a receiver, trustee, or the parent corporation who now is the proper lien holder, but yet is not a party to this civil action now before this court.

She argues that not only does NAFC not have standing to sue, but it has perpetrated a fraud upon the district court, forcing her to bring this issue "before the 'Tarrant County Court of Appeals' to correct this injustice."[20]

NAFC's no-evidence motion for summary judgment asserted that there was no evidence that it was not permitted to do business in Texas or that NAFC

---

well as the rights provided by agreement of the parties and providing that a secured creditor may foreclose on a security agreement).

[19]*See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, 38.002 (West 2008) (providing that a party may be awarded attorney's fees in a breach of contract action, but only if the party previously presented the claim to the opposing party).

[20]We take this reference to mean this court, as this court sits in Tarrant County, and there is no court in Texas known as the Tarrant County Court of Appeals.

was not the owner of the debt and the contract. In response, Avdeef argued that GMAC had shut down NAFC. In support of this assertion, Avdeef attached an article from a website stating that Nuvell Credit Company LLC and National Auto Finance Co. ceased originating loans as of January 7, 2009. The article stated that Nuvell is a subsidiary of GMAC, "the captive lender for General Motors Corp.," and quotes a GMAC spokesperson as saying that "we are not doing subprime financing at this time" and that "[w]hen the economy improves, we'll have the capacity to start again through GMAC." The article further quotes the spokesperson as saying that National Auto Finance had originally been set up to provide funding for non-GM dealers and that "[t]he part of that group that remains is moving over to GMAC."

A corporate entity must take particular steps to dissolve and cease to exist.[21] The article states that NAFC would no longer be originating loans and that employees of that group would be transferred to a different group, but it does not state that NAFC had been wound up and no longer existed as an entity.[22] NAFC produced sufficient summary judgment evidence to show that it had been assigned the seller's rights under the contract and to therefore demonstrate its

---

[21]*See, e.g.*, Tex. Bus. Orgs. Code Ann. § 11.052 (West 2011) (providing procedures for the winding up of a domestic entity).

[22]*See, e.g.*, *id.* (providing that while winding up its business, a domestic entity shall cease to carry on its business and shall collect its property and perform any other act required to wind up its affairs, and that it may prosecute a civil action during that time); § 21.502 (setting out the requirements for a domestic entity to voluntarily wind up).

standing to sue on the contract, and Avdeef did not produce evidence to refute its evidence of standing. To the extent that Avdeef's claims were a challenge to NAFC's capacity, this article was not enough raise a fact issue to defeat NAFC's no-evidence motion. Accordingly, the trial court granted no-evidence summary judgment for NAFC. Because Avdeef failed to provide sufficient competent summary judgment evidence to show that NAFC was no longer in business or was not in good standing with the secretary of state, we cannot say that the trial court erred.

After the trial court rendered judgment on September 27, 2010, Avdeef filed with the trial court copies of correspondence she had mailed to counsel for NAFC. With this correspondence, Avdeef included copies of a certification from the Texas secretary of state that as of September 2010, Nuvell National Auto Finance LLC was delinquent in filing its franchise tax report and was not in good standing with that office. This document was not before the trial court when it rendered judgment, and therefore we cannot say that the trial court abused its discretion by not considering it.[23] We note, however, that in response to her letter, NAFC filed with the trial court a certificate from the secretary of state,

---

[23]*See Leinen v. Buffington's Bayou City Serv. Co.*, 824 S.W.2d 682, 685 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding that trial court did not abuse its discretion by not considering pleadings filed after the summary judgment hearing); *Hill v. Milani*, 678 S.W.2d 203, 205 (Tex. App.—Austin 1984) (holding that trial court did not abuse its discretion by refusing to consider material filed after the summary judgment hearing), *aff'd*, 686 S.W.2d 610 (Tex. 1985); *Jones v. Hubbard*, 302 S.W.2d 493, 496 (Tex. Civ. App.—Waco 1957, writ ref'd n.r.e.) (same).

dated October 6, 2010, providing that NAFC had satisfied its franchise tax responsibility in December 2009 and was in good standing as of that time and continued in good standing through November 2010.  We overrule Avdeef's second issue.

In her fifth issue, Avdeef argues that the trial court erred by allowing NAFC "to make false, misleading and contradicting statements, thus failed to consider [NAFC]'s credibility in determining the merits of the case before the [trial court], regardless of how many times [Avdeef] brought these false and misleading statements to the court's attention."  She first argues that NAFC falsely claimed that the company exists.  As we explained in discussion of Avdeef's second issue, Avdeef failed to provide evidence raising a fact issue about whether NAFC continues to exist.  We therefore overrule this part of her issue.

Avdeef further argues that NAFC denied that it had harassed her but that this denial was refuted by affidavit testimony.  Avdeef does not, however, direct this court to what affidavit testimony in the record she believes supports her claim that NAFC falsely stated it had not harassed her.  NAFC addressed her claim of harassment in its no-evidence motion and asserted that there was no evidence that it had harassed Avdeef's family, friends, and neighbors.  Although we are not required to do so,[24] we looked through Avdeef's response to NAFC's motion to

---

[24]*See* Tex. R. App. P. 38.1(g) (requiring the appellant's brief to contain citations to the record in support of the contentions made); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("In determining whether a respondent to a no-evidence motion for summary

13

see if she produced evidence on this point. In response, Avdeef stated that she had not collected affidavits from her friends, family, and neighbors "due to the fact that this process has been drug out for other reasons." But she did not explain why she had been unable to obtain these affidavits.

Avdeef did provide an affidavit from her mother-in-law, who stated that representatives from NAFC had called her repeatedly and "continually made verbal threats and harassing statements demanding that [she] have [Avdeef] relinquish the vehicle." She also stated that a Tarrant County constable had been sent to her residence by counsel for NAFC and that the constable had slandered and humiliated her to her neighbors, and the City of Everman Water Department employees and TXU Utilities contractors who were working on the water lines by her house. She did not, however, give even a general idea of what was said to her by the NAFC representatives or the Tarrant County constable. Thus, her assertion that the statements were harassing, threatening, or slanderous were conclusory and therefore not competent summary judgment evidence.[25]

Avdeef's mother-in-law further averred that NAFC's representatives called her house every fifteen minutes to half an hour on most days between

---

judgment has produced sufficient evidence to raise a genuine issue of material fact, courts are not required to search the record without guidance.").

[25]*See LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 689 (Tex. 2006) (applying law that legal conclusions in an affidavit made without supporting facts do not constitute competent summary judgment evidence).

September 2007 and January 2008, but Avdeef does not direct this court to anywhere in the record that NAFC denied this occurred, assuming that this constitutes actionable harassment.[26] Accordingly, this evidence does not support Avdeef's claim that NAFC made "false, misleading and contradicting statements" and that the trial court erred by allowing it to do so. We overrule Avdeef's fifth issue.

In her third issue, Avdeef argues that the trial court erred "by prejudging the case by statements made on the court record, and by actions taken by the court; therefore, [it] improperly failed to consider any of the merits of [Avdeef]'s counterclaim to hold [NAFC] responsible for its actions." In support of this issue, Avdeef first contends that after the hearing on one of Avdeef's motions, the trial judge stepped down from the bench, approached her, lectured her ex parte about how much she would owe NAFC once she returned the car, and told her that the amount would be offset by how much NAFC sold the car for. Avdeef asserts that she found this behavior to be threatening.

Avdeef also points out that the trial court commented at a hearing that NAFC's counsel and firm are "good people." The trial court's actual statement was in response to NAFC's counsel's statement to the court that in motions filed by Avdeef, she made personal attacks on counsel and his firm. Counsel stated

---

[26]See Tex. Fin. Code Ann. § 392.302 (West 2006) (providing that a debt collector may not oppress, harass, or abuse a person by "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number").

15

that although Avdeef was acting pro se, "she is obligated to at least, at the very least, be respectful to opposing counsel." In response, the trial court informed Avdeef that counsel and his law firm handled collections and foreclosure matters and had "done a good job" and "they are very respectful of those individuals."

Regardless of whether the trial court's statements were improper, none of the actions described by Avdeef show that the trial court prejudged the case on her counterclaims. Avdeef has failed to point out to this court any claim on which she produced enough evidence to raise a fact issue but on which the trial court nevertheless granted no-evidence summary judgment. Accordingly, Avdeef has failed to show that the trial court prejudged her case or that the trial court reached an incorrect result.[27]

Avdeef also complains about the lack of a court reporter at the summary judgment hearing. But a summary judgment hearing is not an evidentiary hearing at which a court reporter is required.[28] We overrule this argument.

Avdeef further argues that, after she pointed out that the trial court had not ruled on motions that she had filed, the court made "the incredible statement . . .

_____

[27] *See* Tex. R. App. P. 44.1.

[28] *See Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 885–86 (Tex. App.—Dallas 2011, no pet.); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (requiring summary judgment grounds and objections to be in writing and stating that "[t]o permit 'issues' to be presented orally would encourage parties to request that a court reporter record summary judgment hearings, a practice neither necessary nor appropriate to the purposes of such a hearing").

16

'Well, I guess I better finally read through all the material.'" That the trial court had at some point not yet read motions filed by Avdeef is not evidence that the court had prejudged Avdeef's claims. The trial court is generally not required to consider a motion unless it is called to the court's attention.[29] And furthermore, Avdeef indicated that the trial court made this statement at the summary judgment hearing, which was held on September 22, 2010. The trial court did not enter its summary judgment until September 27, 2010, and Avdeef has pointed out nothing in the record to show that prior to rendering its judgment, the trial court did not consider all competent evidence before it. We overrule Avdeef's third issue.

In her fourth issue, Avdeef argues that the trial court erred by allowing NAFC "to violate multiple state and federal laws, and thus wholly refused to follow the rule of law set down by state and federal lawmakers to regulate . . . [NAFC], and thus this insults our legal system as a whole." Under this issue, Avdeef first argues that the frequent phone calls described in her mother-in-law's affidavit was some evidence of harassment in violation of the federal FDCPA.[30]

Avdeef does not direct this court to what provision of the FDCPA she claims NAFC violated by making repeated telephone calls to her mother-in-law's

---

[29]*In re Blakeney*, 254 S.W.3d 659, 662 (Tex. App.—Texarkana 2008, no pet.); *Risner v. McDonald's Corp.*, 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet. denied).

[30]15 U.S.C.A. §§ 1692–1692P (West 2009 & Supp. 2011).

house.  Nevertheless, we note that under the FDCPA, a debt collector may not "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[31]  We assume that this is the statute that Avdeef contends NAFC violated.

But the statute defines the term "debt collector" to mean "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[32]  The statute excludes from the definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."[33]  Under this exclusion, NAFC would not be considered a debt collector because it acquired its interest in the contract while Avdeef was not yet in default.

Notwithstanding this exclusion, the statute contains a "false name exception" to the exclusion, providing that the term "debt collector" does include a creditor collecting on its own debts if in the course of its collection efforts, the creditor "uses any name other than his own which would indicate that a third

---

[31]*Id.* § 1692d.

[32]*Id.* § 1692a.

[33]*Id.*

person is collecting or attempting to collect such debts."[34]   But Avdeef's mother-in-law asserted in her affidavit that the persons calling her identified themselves as representatives of NAFC.   Thus, under Avdeef's own evidence, the FDCPA does not apply to NAFC's telephone calls.

Avdeef further asserts that the trial court engaged in "protectionism" by refusing to allow her any proper defense.   Avdeef does not explain what defense she was prevented from making.   And although Avdeef claimed that NAFC was not a proper party to sue on the contract and challenged NAFC's requested remedy for Avdeef's breach of that contract, she never refuted the terms of the contract or that she breached the contract.   We overrule Avdeef's fourth issue.

In the arguments section of Avdeef's brief, she makes an additional argument that does not appear to relate to any of her issues, but we nevertheless briefly address it.   She asserts that "by denying [Avdeef her] day in court to present [her] side of the case, [she was] denied . . . the right to face [her] accusers before a jury of [her] peers."   But the role of a jury is to determine questions of fact,[35] and Avdeef failed to point out to the trial court evidence raising a fact issue on the no-evidence summary judgment grounds asserted by

---

[34]*Id.*

[35]*Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 535 (Tex. 1995) (Spector, J., concurring and dissenting) ("The right of trial by jury dictates that a jury must be allowed to decide all matters of fact."); *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991) (stating that a refusal to grant a jury trial is harmless error if the record shows that no material issues of fact exist and an instructed verdict would have been justified).

NAFC and the traditional summary judgment grounds established by NAFC. We overrule this argument.

Having overruled all of Avdeef's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  December 15, 2011