02-10-344-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00344-CV

 

 


 
 
 Melissa Avdeef
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 National Auto Finance Company
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 67th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Melissa Avdeef appeals from the trial court’s summary judgment in favor of
Appellee National Auto Finance Company (NAFC) on its claims against Avdeef for
breach of contract and foreclosure of its security interest and against Avdeef
on her counterclaims.  Avdeef, who is proceeding pro se, argues in five issues
that the trial court erroneously exceeded the four corners of the contract in
awarding NAFC damages and possession of the vehicle, that NAFC is no longer in
business, that the trial court erred by “prejudging the case by statements made
on the court record,” by allowing NAFC “to violate multiple state and federal
laws,” and by “allowing [NAFC] to make false, misleading[,] and contradicting
statements,” and that the trial court failed to consider NAFC’s credibility.  Because
we hold that the trial court did not err by granting summary judgment, we
affirm.

NAFC
sued Avdeef to recover the balance due on a motor vehicle retail installment
contract entered into by Avdeef.  NAFC asserted that in 2004, Avdeef purchased
a vehicle from Meador Chrysler/Plymouth and at the same time executed the
retail installment contract, which gave Meador a security interest in the vehicle. 
NAFC further claimed that it had purchased the contract from Meador and that
Avdeef was now in default of the contract.  It asserted a claim for breach of
contract and sought to foreclose on its security interest.  NAFC also stated
that it was the registered assumed name for Nuvell National Auto Finance LLC.

Avdeef
filed a counterclaim asserting that NAFC was “not a permissible company to do
business in the State of Texas” and was no longer the lien holder.  She further
asserted that NAFC had violated the federal Fair Debt Collection Practices Act (FDCPA).

After
a hearing, the trial court granted summary judgment for NAFC.  The judgment
ordered that NAFC recover from Avdeef $19,792.32 plus interest and attorney’s
fees, that NAFC was awarded foreclosure on its security interest in the vehicle,
and that Avdeef take nothing on her counterclaims.  Avdeef then appealed.

We
review a summary judgment de novo.[2]  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding evidence
contrary to the nonmovant unless reasonable jurors could not.[3] 
We indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.[4]  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all essential
elements of the claim.[5]

After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.[6]  The motion must
specifically state the elements for which there is no evidence.[7] 
The trial court must grant the motion unless the nonmovant produces summary
judgment evidence that raises a genuine issue of material fact.[8]

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.[9]  We review a no-evidence
summary judgment for evidence that would enable reasonable and fair-minded
jurors to differ in their conclusions.[10]  We credit evidence
favorable to the nonmovant if reasonable jurors could, and we disregard
evidence contrary to the nonmovant unless reasonable jurors could not.[11] 
If the nonmovant brings forward more than a scintilla of probative evidence
that raises a genuine issue of material fact, then a no-evidence summary
judgment is not proper.[12]

Avdeef’s
brief does not conform to the appellate briefing rules.  She divides her
“Statement of Facts” into sections by issue, and in each section, she includes
argument pertaining to that issue.[13]  She then includes a three-page
“Summary of the Argument” that, rather than summarizing the arguments relating
to her issues, asserts that NAFC should be held to the rule of law but does not
reference any law or legal principle by which NAFC should be held accountable. 
The “Argument” section of her brief consists of three pages of numbered
paragraphs.  Avdeef does not clearly indicate which paragraphs relate to which
of her issues, and some of the paragraphs do not appear to have any relevance
to her issues.

A
pro se litigant is held to the same standards as licensed attorneys and must
comply with rules of procedure.[14]  But, in light of our
obligation to liberally construe briefs,[15] we address Avdeef’s
arguments to the extent that they are adequately briefed and that we can
understand them.  To the extent that any of her arguments are unintelligible and
inadequately briefed, they are overruled.[16]

In
her first issue, Avdeef argues that the trial court improperly allowed NAFC to
exceed the terms of the contract.  She contends that the contract did not allow
NAFC to both foreclose on the vehicle and be awarded damages.  Avdeef argues
that the trial court improperly allowed NAFC to

wander outside of the four corners of the contract, and thus
improperly granted [NAFC] possession of the motor vehicle, the value of the
contract, damages, and legal fees, the law limits the collection of contractual
goods to the limits specified within the contract, you get one or the other,
the money owed, or the vehicle, then in turn you have to sue for the balance
owed AFTER the sale of the vehicle, not double of everything, and the vehicle
to boot, thus this judgment was wholly improper.

To
address what we interpret as an argument that the trial court granted NAFC
relief not authorized by the contract, we examine the summary judgment evidence
offered by NAFC in support of its breach of contract claim, as well as any
evidence offered by Avdeef in reply.

Regarding
its breach of contract claim, NAFC produced a copy of the sales contract, which
provided the following terms:

·       
a
total loan amount of $29,341.44, to be repaid in seventy-two monthly payments
of $407.52;

·       
an
annual percentage rate of 12.95 percent;

·       
a
late charge of five percent of the scheduled payment for any payment not
received within fifteen days of its due date; and

·       
in
the event that Avdeef failed to pay all she owed when the final payment became
due or if she did not pay all she owed if the seller demanded payment in full
under the contract, an interest rate set at the higher rate of eighteen percent
per year or the maximum rate allowed by law.

The
contract further provided that if Avdeef defaulted on the contract, the seller
had the right to accelerate the loan and require her to pay the remaining
balance all at once.  It further provided that “[i]f we [the seller] hire an
attorney who is not our salaried employee to collect what you owe, you will pay
any reasonable attorney’s fees plus any court costs and disbursements, as the
law allows.”

The
contract defined default to include Avdeef’s failure to pay any amount when
due.  Finally, the contract granted to the seller a security interest in the
vehicle and provided that upon default, the seller had the right to repossess
the vehicle, sell it to pay allowed expenses, and use any remaining amount to
reduce the amount Avdeef owed.  Avdeef did not challenge these terms of the
contract, either in the trial court or on appeal.

The
contract shows on its face an assignment to “National Auto Finance Co.”  NAFC
included with its summary judgment evidence an assignment from Nuvell Credit
Company LLC d/b/a/ National Auto Finance Company to Nuvell National Auto
Finance LLC, dated December 1, 2006.  NAFC also asserted that it was the
registered assumed name for Nuvell National Auto Finance LLC,[17]
and it filed as summary judgment evidence the assumed name certificate from the
Texas Secretary of State showing that NAFC was the registered assumed name of
Nuvell National Auto Finance LLC.

NAFC
also produced a copy of Avdeef’s payment schedule, showing that the last
payment made by Avdeef was on September 26, 2007, and that as of that time,
after applying that payment, the remaining balance owed totaled $12,951.70.  This
schedule shows that at the time of the assignment to Nuvell National Auto
Finance LLC, Avdeef was not in default.  Avdeef did not challenge this
evidence, either in the trial court or on appeal.

The
only part of Avdeef’s response to NAFC’s summary judgment motion that related
to NAFC’s breach of contract evidence was a paragraph in which she stated,

[T]hey are attempting to double dip by suing for more
than double what the original contract balance was, but are asking for the
vehicle to be seized also.  This is wholly improper for them to collect on both
the contract, and the collateral, and explains why they are now improperly and
fraudulently renaming the contract as “damages” in order to perpetrate this
fraud upon the court.

The
terms of the contract, however, allowed the seller to accelerate the loan upon
default, apply an interest rate of at least eighteen percent to any outstanding
balance, charge late fees, and repossess the vehicle if the full amount was not
paid.  Thus, from the plain terms of the contract, even if the amount owed
after late fees and interest became more than the amount originally loaned,
Avdeef was still obligated to pay.  The seller also had the right to repossess
the vehicle, sell it, apply the sale proceeds to its costs, and use any amount
left to reduce the amount that Avdeef owed.  In contrast to what Avdeef argued
in the trial court and now on appeal, the remedies sought by NAFC were allowed
under the contract.

Avdeef
also asserts, without any citations to authority, that NAFC originally pursued
“this legal matter” “as a debt, and not a contractual obligation, and [NAFC’s]
legal counsel identified [itself] as debt collectors, with the written
statement that binds them to follow the rules and regulations of the federal
Fair Debt Collections Practices Act . . . for which they have
repeatedly violated.”  She contends that the trial court set an improper
precedent that will allow debt collection firms to no longer be held to the
contract they are attempting to enforce.  She argues that “you foreclose on a
debt, you enforce on a contract, yet [NAFC] did not sue on a debt.”

We
are unclear what specific legal argument Avdeef intended to make by these
statements.  To the extent that Avdeef argues that a party may not foreclose on
collateral in a claim based on a contract and can only pursue that remedy by
suing “on a debt,” she is mistaken.[18]  To the extent that she
argues that if a company makes attempts to collect on a debt owed under a
contract prior to filing a lawsuit, it may no longer sue for breach of that
contract, she has cited no law in support of that position.  And we note that
the law often encourages parties to settle disputes prior to litigation.[19] 
We overrule Avdeef’s first issue.

In
Avdeef’s second issue, she argues that the trial court erred by allowing NAFC
to perpetrate a fraud upon the court, as NAFC

is and was publicly shut down by the parent corporation
and, therefore, is no longer in business, and failed to sue under a receiver,
trustee, or the parent corporation who now is the proper lien holder, but yet
is not a party to this civil action now before this court.

She
argues that not only does NAFC not have standing to sue, but it has perpetrated
a fraud upon the district court, forcing her to bring this issue “before the
‘Tarrant County Court of Appeals’ to correct this injustice.”[20]

NAFC’s
no-evidence motion for summary judgment asserted that there was no evidence that
it was not permitted to do business in Texas or that NAFC was not the owner of
the debt and the contract.  In response, Avdeef argued that GMAC had shut down
NAFC.  In support of this assertion, Avdeef attached an article from a website
stating that Nuvell Credit Company LLC and National Auto Finance Co. ceased
originating loans as of January 7, 2009.  The article stated that Nuvell is a
subsidiary of GMAC, “the captive lender for General Motors Corp.,” and quotes a
GMAC spokesperson as saying that “we are not doing subprime financing at this
time” and that “[w]hen the economy improves, we’ll have the capacity to start
again through GMAC.”  The article further quotes the spokesperson as saying
that National Auto Finance had originally been set up to provide funding for
non-GM dealers and that “[t]he part of that group that remains is moving over
to GMAC.”

A
corporate entity must take particular steps to dissolve and cease to exist.[21] 
The article states that NAFC would no longer be originating loans and that
employees of that group would be transferred to a different group, but it does
not state that NAFC had been wound up and no longer existed as an entity.[22] 
NAFC produced sufficient summary judgment evidence to show that it had been
assigned the seller’s rights under the contract and to therefore demonstrate
its standing to sue on the contract, and Avdeef did not produce evidence to refute
its evidence of standing.  To the extent that Avdeef’s claims were a challenge
to NAFC’s capacity, this article was not enough raise a fact issue to defeat
NAFC’s no-evidence motion.  Accordingly, the trial court granted no-evidence
summary judgment for NAFC.  Because Avdeef failed to provide sufficient
competent summary judgment evidence to show that NAFC was no longer in business
or was not in good standing with the secretary of state, we cannot say that the
trial court erred.

After
the trial court rendered judgment on September 27, 2010, Avdeef filed with the
trial court copies of correspondence she had mailed to counsel for NAFC.  With
this correspondence, Avdeef included copies of a certification from the Texas secretary
of state that as of September 2010, Nuvell National Auto Finance LLC was
delinquent in filing its franchise tax report and was not in good standing with
that office.  This document was not before the trial court when it rendered
judgment, and therefore we cannot say that the trial court abused its
discretion by not considering it.[23]  We note, however, that
in response to her letter, NAFC filed with the trial court a certificate from
the secretary of state, dated October 6, 2010, providing that NAFC had
satisfied its franchise tax responsibility in December 2009 and was in good
standing as of that time and continued in good standing through November 2010.  We
overrule Avdeef’s second issue.

In
her fifth issue, Avdeef argues that the trial court erred by allowing NAFC “to
make false, misleading and contradicting statements, thus failed to consider
[NAFC]’s credibility in determining the merits of the case before the [trial
court], regardless of how many times [Avdeef] brought these false and misleading
statements to the court’s attention.”  She first argues that NAFC falsely
claimed that the company exists.  As we explained in discussion of Avdeef’s
second issue, Avdeef failed to provide evidence raising a fact issue about
whether NAFC continues to exist.  We therefore overrule this part of her issue.

Avdeef
further argues that NAFC denied that it had harassed her but that this denial
was refuted by affidavit testimony.  Avdeef does not, however, direct this
court to what affidavit testimony in the record she believes supports her claim
that NAFC falsely stated it had not harassed her.  NAFC addressed her claim of
harassment in its no-evidence motion and asserted that there was no evidence
that it had harassed Avdeef’s family, friends, and neighbors.  Although we are
not required to do so,[24] we looked through
Avdeef’s response to NAFC’s motion to see if she produced evidence on this
point.  In response, Avdeef stated that she had not collected affidavits from
her friends, family, and neighbors “due to the fact that this process has been
drug out for other reasons.”  But she did not explain why she had been unable
to obtain these affidavits.

Avdeef
did provide an affidavit from her mother-in-law, who stated that
representatives from NAFC had called her repeatedly and “continually made
verbal threats and harassing statements demanding that [she] have [Avdeef]
relinquish the vehicle.”  She also stated that a Tarrant County constable had
been sent to her residence by counsel for NAFC and that the constable had
slandered and humiliated her to her neighbors, and the City of Everman Water
Department employees and TXU Utilities contractors who were working on the
water lines by her house.  She did not, however, give even a general idea of what
was said to her by the NAFC representatives or the Tarrant County constable. 
Thus, her assertion that the statements were harassing, threatening, or
slanderous were conclusory and therefore not competent summary judgment
evidence.[25]

Avdeef’s
mother-in-law further averred that NAFC’s representatives called her house
every fifteen minutes to half an hour on most days between September 2007 and
January 2008, but Avdeef does not direct this court to anywhere in the record
that NAFC denied this occurred, assuming that this constitutes actionable
harassment.[26]  Accordingly, this
evidence does not support Avdeef’s claim that NAFC made “false, misleading and
contradicting statements” and that the trial court erred by allowing it to do
so.  We overrule Avdeef’s fifth issue.

In
her third issue, Avdeef argues that the trial court erred “by prejudging the
case by statements made on the court record, and by actions taken by the court;
therefore, [it] improperly failed to consider any of the merits of [Avdeef]’s counterclaim
to hold [NAFC] responsible for its actions.”  In support of this issue, Avdeef
first contends that after the hearing on one of Avdeef’s motions, the trial judge
stepped down from the bench, approached her, lectured her ex parte about how
much she would owe NAFC once she returned the car, and told her that the amount
would be offset by how much NAFC sold the car for.  Avdeef asserts that she
found this behavior to be threatening.

Avdeef
also points out that the trial court commented at a hearing that NAFC’s counsel
and firm are “good people.”  The trial court’s actual statement was in response
to NAFC’s counsel’s statement to the court that in motions filed by Avdeef, she
made personal attacks on counsel and his firm.  Counsel stated that although
Avdeef was acting pro se, “she is obligated to at least, at the very least, be
respectful to opposing counsel.”  In response, the trial court informed Avdeef that
counsel and his law firm handled collections and foreclosure matters and had
“done a good job” and “they are very respectful of those individuals.”

Regardless
of whether the trial court’s statements were improper, none of the actions
described by Avdeef show that the trial court prejudged the case on her
counterclaims.  Avdeef has failed to point out to this court any claim on which
she produced enough evidence to raise a fact issue but on which the trial court
nevertheless granted no-evidence summary judgment.  Accordingly, Avdeef has
failed to show that the trial court prejudged her case or that the trial court
reached an incorrect result.[27]

Avdeef
also complains about the lack of a court reporter at the summary judgment
hearing.  But a summary judgment hearing is not an evidentiary hearing at which
a court reporter is required.[28]  We overrule this
argument.

Avdeef
further argues that, after she pointed out that the trial court had not ruled
on motions that she had filed, the court made “the incredible statement . . .
‘Well, I guess I better finally read through all the material.’”  That the
trial court had at some point not yet read motions filed by Avdeef is not
evidence that the court had prejudged Avdeef’s claims.  The trial court is
generally not required to consider a motion unless it is called to the court’s
attention.[29]  And furthermore, Avdeef
indicated that the trial court made this statement at the summary judgment
hearing, which was held on September 22, 2010.  The trial court did not enter
its summary judgment until September 27, 2010, and Avdeef has pointed out
nothing in the record to show that prior to rendering its judgment, the trial
court did not consider all competent evidence before it.  We overrule Avdeef’s
third issue.

In
her fourth issue, Avdeef argues that the trial court erred by allowing NAFC “to
violate multiple state and federal laws, and thus wholly refused to follow the
rule of law set down by state and federal lawmakers to regulate . . .
[NAFC], and thus this insults our legal system as a whole.”  Under this issue,
Avdeef first argues that the frequent phone calls described in her
mother-in-law’s affidavit was some evidence of harassment in violation of the federal
FDCPA.[30]

Avdeef
does not direct this court to what provision of the FDCPA she claims NAFC
violated by making repeated telephone calls to her mother-in-law’s house.  Nevertheless,
we note that under the FDCPA, a debt collector may not “[c]aus[e] a telephone
to ring or engag[e] any person in telephone conversation repeatedly or
continuously with intent to annoy, abuse, or harass any person at the called
number.”[31]  We assume that this is
the statute that Avdeef contends NAFC violated.

But
the statute defines the term “debt collector” to mean “any person . . .
who regularly collects or attempts to collect, directly or indirectly, debts
owed or due or asserted to be owed or due another.”[32] 
The statute excludes from the definition “any person collecting or attempting
to collect any debt owed or due or asserted to be owed or due another to the
extent such activity . . . concerns a debt which was not in
default at the time it was obtained by such person.”[33] 
Under this exclusion, NAFC would not be considered a debt collector because it
acquired its interest in the contract while Avdeef was not yet in default.

Notwithstanding
this exclusion, the statute contains a “false name exception” to the exclusion,
providing that the term “debt collector” does include a creditor collecting on
its own debts if in the course of its collection efforts, the creditor “uses
any name other than his own which would indicate that a third person is
collecting or attempting to collect such debts.”[34] 
But Avdeef’s mother-in-law asserted in her affidavit that the persons calling
her identified themselves as representatives of NAFC.  Thus, under Avdeef’s own
evidence, the FDCPA does not apply to NAFC’s telephone calls.

Avdeef
further asserts that the trial court engaged in “protectionism” by refusing to
allow her any proper defense.  Avdeef does not explain what defense she was
prevented from making.  And although Avdeef claimed that NAFC was not a proper
party to sue on the contract and challenged NAFC’s requested remedy for
Avdeef’s breach of that contract, she never refuted the terms of the contract
or that she breached the contract.  We overrule Avdeef’s fourth issue.

In
the arguments section of Avdeef’s brief, she makes an additional argument that
does not appear to relate to any of her issues, but we nevertheless briefly
address it.  She asserts that “by denying [Avdeef her] day in court to present [her]
side of the case, [she was] denied . . . the right to face [her]
accusers before a jury of [her] peers.”  But the role of a jury is to determine
questions of fact,[35] and Avdeef failed to
point out to the trial court evidence raising a fact issue on the no-evidence
summary judgment grounds asserted by NAFC and the traditional summary judgment
grounds established by NAFC.  We overrule this argument.

Having
overruled all of Avdeef’s issues, we affirm the trial court’s judgment.

 

PER CURIAM

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DELIVERED:  December 15,
2011









[1]See Tex. R. App. P. 47.4.





[2]Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).





[3]Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[4]20801, Inc. v. Parker, 249 S.W.3d 392,
399 (Tex. 2008).





[5]See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).





[6]Tex. R. Civ. P. 166a(i).





[7]Id.; Timpte Indus., Inc. v. Gish,
286 S.W.3d 306, 310 (Tex. 2009).





[8]See Tex. R. Civ. P. 166a(i) &
cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).





[9]Sudan v. Sudan, 199 S.W.3d 291, 292
(Tex. 2006).





[10]Hamilton, 249 S.W.3d at 426 (citing City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).





[11]Timpte Indus., 286 S.W.3d at 310
(quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).





[12]Smith v. O’Donnell, 288 S.W.3d 417,
424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.
2003), cert. denied, 541 U.S. 1030 (2004).





[13]See Tex. R. App. P. 38.1(g) (providing
that the appellant’s brief “must state concisely and without argument
the facts pertinent to the issues or points presented”).





[14]Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184–85 (Tex. 1978); Williams v. Capitol Cnty. Mut. Fire Ins. Co., 594 S.W.2d 558, 559 (Tex. Civ. App.—Fort Worth 1980, no writ).





[15]See Tex. R. App. P. 38.9.





[16]See Tex. R. App. P. 38.1(i); Gray v. Nash, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied)
(deciding that issues were waived because of inadequate briefing).





[17]See
Tex. Bus. & Com. Code Ann. §§ 71.001–.203 (West 2009) (providing for the
registration of assumed business or professional names).





[18]See,
e.g., Tex. Bus. & Com. Code Ann. § 9.601 (West 2011) (providing that
after default, a secured party has the rights provided in that subchapter as
well as the rights provided by agreement of the parties and providing that a secured
creditor may foreclose on a security agreement).





[19]See,
e.g., Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, 38.002 (West 2008)
(providing that a party may be awarded attorney’s fees in a breach of contract
action, but only if the party previously presented the claim to the opposing
party).





[20]We take this reference to mean this court, as this court sits in
Tarrant County, and there is no court in Texas known as the Tarrant County
Court of Appeals.





[21]See,
e.g., Tex. Bus. Orgs. Code Ann. § 11.052 (West 2011) (providing procedures
for the winding up of a domestic entity).





[22]See,
e.g., id. (providing that while winding up its business, a domestic
entity shall cease to carry on its business and shall collect its property and
perform any other act required to wind up its affairs, and that it may
prosecute a civil action during that time); § 21.502 (setting out the
requirements for a domestic entity to voluntarily wind up).





[23]See
Leinen v. Buffington’s Bayou City Serv. Co., 824 S.W.2d 682, 685 (Tex. App.—Houston
[14th Dist.] 1992, no writ) (holding that trial court did not abuse its
discretion by not considering pleadings filed after the summary judgment
hearing); Hill v. Milani, 678 S.W.2d 203, 205 (Tex. App.—Austin 1984) (holding
that trial court did not abuse its discretion by refusing to consider material
filed after the summary judgment hearing), aff’d, 686 S.W.2d 610 (Tex.
1985); Jones v. Hubbard, 302 S.W.2d 493, 496 (Tex. Civ. App.—Waco 1957,
writ ref’d n.r.e.) (same).





[24]See
Tex. R. App. P. 38.1(g) (requiring the appellant’s brief to contain citations
to the record in support of the contentions made); Aleman v. Ben E. Keith
Co., 227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (“In
determining whether a respondent to a no-evidence motion for summary judgment
has produced sufficient evidence to raise a genuine issue of material fact,
courts are not required to search the record without guidance.”).





[25]See
LMB, Ltd. v. Moreno, 201 S.W.3d 686, 689 (Tex. 2006) (applying law that
legal conclusions in an affidavit made without supporting facts do not
constitute competent summary judgment evidence).





[26]See
Tex. Fin. Code Ann. § 392.302 (West 2006) (providing that a debt collector may
not oppress, harass, or abuse a person by “causing a telephone to ring repeatedly
or continuously, or making repeated or continuous telephone calls, with the
intent to harass a person at the called number”).





[27]See
Tex. R. App. P. 44.1.





[28]See
Olsen v. Comm’n for Lawyer Discipline, 347 S.W.3d 876, 885–86 (Tex. App.—Dallas
2011, no pet.); see also City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 677 (Tex. 1979) (requiring summary judgment grounds and objections
to be in writing and stating that “[t]o permit ‘issues’ to be presented orally
would encourage parties to request that a court reporter record summary
judgment hearings, a practice neither necessary nor appropriate to the purposes
of such a hearing”).





[29]In
re Blakeney, 254 S.W.3d 659, 662 (Tex. App.—Texarkana 2008, no pet.); Risner
v. McDonald’s Corp., 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet.
denied).





[30]15
U.S.C.A. §§ 1692–1692P (West 2009 & Supp. 2011).





[31]Id. § 1692d.





[32]Id. § 1692a.





[33]Id.





[34]Id.





[35]Tex.
Workers’ Comp. Comm’n v. Garcia, 893 S.W.2d 504, 535 (Tex. 1995) (Spector,
J., concurring and dissenting) (“The right of trial by jury dictates that a
jury must be allowed to decide all matters of fact.”); Halsell v. Dehoyos,
810 S.W.2d 371, 372 (Tex. 1991) (stating that a refusal to grant a jury trial
is harmless error if the record shows that no material issues of fact exist and
an instructed verdict would have been justified).