

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00236-CV

SHARMYN LONG                                                       APPELLANT

V.

PAMELA FARIS AND P S FARIS                                        APPELLEES
LLC

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 096-291739-17

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Sharmyn Long contracted with Appellees Pamela Faris and P S Faris LLC for professional consulting services in conjunction with her divorce. Long and her ex-husband entered into a mediated settlement agreement, and the divorce decree stated that Appellees fulfilled their obligation to Long and had

---

[1]*See* Tex. R. App. P. 47.4.

no further obligation to her "absent an additional written agreement between" them. Long subsequently sued Appellees for breach of contract, breach of fiduciary duty, and negligent misrepresentation, and Appellees moved for traditional and no-evidence summary judgment. The trial court granted summary judgment for Appellees "in all respects," and in two issues, Long appeals. We affirm.

## II. Summary Judgment

Long complains that the trial court erred by granting summary judgment for Appellees because it failed to consider the evidence in the light most favorable to her and failed to disregard all contrary evidence and inferences. She also complains that she offered more than a scintilla of evidence on all of the elements of her causes of action. Appellees respond that Long misapprehends summary judgment standards, failed to raise a genuine issue of material fact to overcome summary judgment on the challenged elements of her causes of action, and failed to preserve her challenge to the form of the summary judgment motion.

### A. Standards of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v.*

2

*Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). The appellate court can consider only the material on file with the trial court as of the time the summary judgment was granted.

3

*Brookshire v. Longhorn Chevrolet Co.*, 788 S.W.2d 209, 213 (Tex. App.—Fort Worth 1990, no writ).

In a no-evidence summary judgment case, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

As in traditional summary judgment cases, when reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller*, 168 S.W.3d at 822). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of

4

probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary judgment proof satisfied the rule 166a(c) burden. *Id.*

## B. Background

Appellees jointly filed a traditional and no-evidence motion for summary judgment. In the no-evidence portion of the motion, Appellees challenged certain elements of all three of Long's causes of action—breach of contract, breach of fiduciary duty, and negligent misrepresentation.

With regard to Long's claim for breach of contract, Appellees did not challenge the existence of a valid contract. Instead, they argued that Long had no evidence to prove that Appellees breached the contract or that Long suffered damages as a result of any alleged breach. Appellees challenged all elements of Long's breach-of-fiduciary-duty claim, contending that Long had no evidence of (1) a fiduciary relationship between the parties, (2) a breach of any fiduciary duty that Appellees owed to Long, or (3) injury or damage to Long—or benefit to

5

Appellees—as a result of any alleged breach. Appellees likewise challenged all elements of Long's negligent misrepresentation claim, arguing that Long had no evidence that (1) Appellees made a representation to Long in the course of their business or in a transaction in which they had an interest, (2) any alleged information supplied by Appellees was false, (3) Appellees failed to exercise reasonable care or competence in obtaining or communicating the alleged information, (4) Long justifiably relied upon any representation by Appellees, or (5) Long suffered damages proximately caused by Long's alleged reliance.

In her response to the motion, Long included her own affidavit in which she swore to the following facts:

> On December 7, 2011, I hired Defendant Pam Faris and her company, P S Faris LLC, to specifically analyze the multitude of documents that were part of the divorce and provide a report or reports to help in the divorce. I was told to hire them by my attorney handing the divorce proceeding, Brian Webb. Sometime after that, her company merged with the Defendant Rylander, Clay & Ovitz LLC ("Rylander").[2] Subsequently, Rylander sent another contract like the one signed with Faris and P S Faris, dated October 1, 2012, which I signed. Attached as Exhibits A and B are the contracts I entered into with, first Pam Faris and P S. Faris, and then Defendant Rylander.

> During the course of the Defendants' employment by me, I provided voluminous documents of my financial and other records as requested by the Defendants so they could conduct their analyzation [sic]. These were provided throughout the period from their hiring up to and including the date of the mediation of the divorce suit, which mediation occurred on December 17 and 18, 2012. All during this

---

[2]Although Long labels Rylander as "Defendant" in her affidavit, there is nothing in this record to indicate that Rylander was ever made a party to the underlying lawsuit.

6

preparation time, I made repeated requests of the Defendants for status reports as to how their analyzation [sic] was progressing but was told by Defendant Faris that this information was "privileged" and could not be revealed to me even though I was the person who hired them. She gave me to [sic] explanation for why this contracted for work product was "privileged" even though I repeatedly asked for this explanation and the work product I contracted for. Attached as Exhibit C and incorporated here are emails I sent to the Defendants, but didn't receive any replies. I repeatedly asked the Defendants what they would recommend as to how to either settle this matter or proceed to trial, but either they failed to respond, or at times they said they couldn't talk to me saying it was privileged, even though it was me who hired them and was paying their bills. I was presented with bills for their work on this project, both by Faris and P S Faris, and later by Rylander. When presented with the bills, I attempted to get information about the items listed, such as "Schedule work" and "Analyze documents" but Defendant Faris never furnished explanations. I provided everything asked by these Defendants whether they were bank records, other financial documents, access to my bank accounts, real estate records and any all [sic] other documents and information they requested. Their contracts provided that they were to provide professional consulting services for me and my attorneys in my divorce proceeding. They were also to "manage" the documents I provided. Additionally, I frequently requested they report to me about their findings but Defendant Faris never responded to my requests.

Since these Defendants were hired, on December 7, 2011, and up until the mediation of my divorce proceeding, on December 17 and 18, 2012, [I] was never furnished with any work product, no indication of any analysis or any information about what they were doing; however, I continued to receive their bills, which I paid.

At the mediation, held on December 17 and 18, 2012, I was finally presented with schedules prepared by the Defendants, specifically by Defendant Faris on her computer at the mediation. These schedules contained numerous errors, numerous misstatements, and values that didn't make any sense. For example, the real estate values listed on the schedules used at the mediation were wrong, the checking account balances were wrong, and the schedules even included assets belonging to my mother, Madelyn Long. After reviewing the schedules after the mediation, in fact they show that my ex-husband was credited with 86% of the

assets and me, 14%. This is why this work product of the Defendants was totally useless and a not [sic] what I had contracted for from the Defendants. Attached as Exhibit D and incorporated herein are the schedules prepared by Defendants that contained significant errors and which were used to "settle" this matter.

These schedules were the first work product produced and shown to me by the Defendants and they were completely useless. As a result, these Defendants breached their contract with me, breached their fiduciary duty to me and negligently misrepresented the information provided by me at the mediation.

Attached as Exhibit E and incorporated herein are copies of the documents submitted to me by this [sic] Defendants.

The contracts say that they will perform "management of documents." I don't really know what they actually did to manage my documents, except copy the information I gave them and then prepare these useless schedules at the mediation. I was repeatedly told by the Defendant Pam Faris, that she would categorize them, analyze them and show values. However, she failed to do that. For example, values listed on the schedule for properties listed as 208 Denton, 206 Monticello and 1538 Allen were overvalued on the schedules, which resulted in my actual share of the division of the marital estate to be overinflated. This after [I] had provided the Defendants with all the information she needed to investigate the values of these properties. In addition, there were errors including showing the property known as Grupo Mayan timeshare with a value of $0 and given to my ex-husband, when in actuality, the value was $30,000. There was even failure to claim $24,378.22 as separate property belonging to me, for funds my ex-husband took from me for the property 1113 S. St. Mary's, Beeville, TX. Faris had documented this, but failed to include it on her schedule for my benefit.

Further, the Defendants had over 11 months to prepare for the mediation, but never produced any analysis to me until the afternoon of the first day of the mediation. As a result, both me and my mother were overwhelmed with the schedules the Defendants prepared at the mediation. In addition, when I hired them I specifically requested them to go through the bank accounts and trace what happened to community funds spent and removed from multiple accounts at financial institutions by my ex-husband.

8

Finally, attached as Exhibit F and incorporated herein, is my email of December 28, 2012, to both my attorneys and to the Defendants expressing my outrage at how this was conducted, including the significant errors and omissions on the schedules by Defendants.

I hired the Defendants on the recommendation of the Webb firm and trusted them, based on the Webb firm's recommendations. My trust was taken advantage of and I have suffered damages in at least the amount of the contract amount [sic], plus other damages caused by these Defendants['] failure to perform their contract, their negligent misrepresentation of the information I provided and their breach of their fiduciary duty to me.

Along with the exhibits referenced in and attached to the affidavit, this constituted the entirety of Long's summary judgment evidence.

Appellees filed a reply to Long's response in which they provided further argument and lodged objections to certain portions of Long's affidavit. On June 15, 2017, the trial court granted Appellees' traditional and no-evidence summary judgment motion "in all respects" and dismissed all of Long's claims "in their entirety" with prejudice.[3]

---

[3]From a technical perspective, the disposition of a motion for summary judgment should be a take-nothing judgment on the merits on the particular ground or grounds raised, while the granting of a motion to dismiss results in a dismissal order, either with or without prejudice. *Compare* Tex. R. Civ. P. 166a(a)–(c), (i), *with* Tex. Civ. Prac. & Rem. Code Ann. §§ 13.001, 14.003, 14.010 (West 2017) (addressing dismissals for indigent or incarcerated civil parties), § 74.351(b) (West 2017) (addressing dismissals in healthcare liability cases), *and* Tex. R. Civ. P. 165a (setting out procedure governing dismissal for want of prosecution).

9

## C. Analysis

### 1. Negligent Misrepresentation Claim

Although in their no-evidence motion Appellees challenged all elements of Long's claim for negligent misrepresentation, we will focus on Appellees' challenge as to Long's evidence of damages. *See*, *e.g.*, *Mack Trucks, Inc.*, 206 S.W.3d at 584 (holding that the trial court properly granted no-evidence summary judgment when the plaintiffs produced no evidence that the alleged defects were a cause-in-fact of plaintiffs' injuries and causation was a required element of each of their claims). As to damages for negligent misrepresentation, the only summary judgment evidence offered by Long was her own statement in her affidavit that "I have suffered damages in at least the amount of the contract amount [sic], plus other damages caused by these Defendants['] . . . negligent misrepresentation."

In circumstances where a valid contract exists between the parties, a plaintiff's injury from negligent misrepresentation must be independent from any breach of contract. *D.S.A., Inc. v. Hillsboro ISD*, 973 S.W.2d 662, 663–64 (Tex. 1998) (op. on reh'g) (noting that dispensing with the requirement for an injury independent of the breach of contract "would potentially convert every contract interpretation dispute into a negligent misrepresentation claim"). Long provided no summary judgment evidence of any injury independent of her claim of injury under breach of contract that would support an award of damages for negligent

10

misrepresentation. For this reason, the trial court did not err by granting the no-evidence summary judgment on Long's negligent misrepresentation claim.

## 2. Breach of Fiduciary Duty Claim

In their no-evidence motion for summary judgment, Appellees likewise challenged all elements of Long's claim for breach of fiduciary duty. We will focus on only the first element challenged, that "a fiduciary relationship [existed] between the plaintiff and the defendant." *See Mack Trucks, Inc.*, 206 S.W.3d at 584. As the supreme court has eloquently explained, "[i]n order to give full force to contracts, we do not create [a fiduciary] relationship lightly." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Whether a fiduciary duty exists depends on the circumstances, and the supreme court has instructed us that for a fiduciary relationship to exist in the context of a business transaction, the fiduciary relationship must exist both prior to, and apart from, the agreement that is the basis of the suit. *Id.*; *see also Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006).

Long's only summary judgment evidence as to the existence of a fiduciary relationship consisted of the following statement from her affidavit:

> I hired the Defendants on the recommendation of the Webb firm and *trusted them*, based on the Webb firm's recommendations. *My trust was taken advantage of* and I have suffered damages in at least the amount of the contract amount [sic], plus other damages caused by these Defendants['] failure to perform their contract, their negligent misrepresentation of the information I provided and their breach of their fiduciary duty to me. [Emphases added.]

11

This statement falls short of evidencing that a fiduciary relationship existed between the parties before the contract was executed and that such relationship was somehow separate and apart from the contract between them. *See Willis*, 199 S.W.3d at 277. Thus, Long provided no summary judgment evidence to support a finding that a fiduciary relationship existed between the parties. For this reason, the trial court did not err by granting the no-evidence summary judgment on Long's breach of fiduciary duty claim.

### 3. Breach of Contract Claim

One of the elements of Long's breach of contract claim challenged by Appellees in their no-evidence motion for summary judgment was that Long had "no evidence to support that . . . Plaintiff suffered any damages as a result of the alleged breach." Again, Long's testimony with regard to damages was cursory— that she had "suffered damages in at least the amount of the contract amount [sic], plus other damages caused by these Defendants['] failure to perform their contract." In other words, Long's affidavit merely stated that she had sustained damages in the amount she paid to Appellees pursuant to the contract, as well as other, unspecified damages.

The well-established rule for measuring contract damages is "just compensation for the loss or damage actually sustained." *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952). Conclusory evidence is not competent summary judgment proof as to the element challenged and, therefore, constitutes no evidence. *See A.J. Morris, M.D., P.A. v. De Lage Landen Fin. Servs., Inc.*, No.

12

02-06-00430-CV, 2009 WL 161065, at *9 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.) ("We have already held that this statement is conclusory, and therefore it is not competent evidence of the 2005 taxes."); *see also Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."); *Matheus v. Sasser*, 164 S.W.3d 453, 463 (Tex. App.—Fort Worth 2005, no pet.) (holding that evidence unrelated to the proper measure of damages was "irrelevant").

Long's bare-bones allegation that she sustained damages "in at least the amount of the contract amount [sic], plus other damages" is too vague and conclusory to meet the standard of raising a fact issue as to what would constitute just compensation for whatever loss or damage she contends that she actually sustained. *See Hamilton*, 249 S.W.3d at 426 (requiring trial court to grant no-evidence motion unless respondent produces summary judgment evidence raising a genuine issue of material fact).

For this reason, the trial court did not err by granting the no-evidence summary judgment on Long's breach of contract claim.

### III. Conclusion

Because we agree with Appellees that Long failed to raise a genuine issue of material fact to overcome Appellees' no-evidence summary judgment challenge on at least one of the elements on all of her causes of action, we overrule both of Long's issues and affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and PITTMAN, JJ.

DELIVERED:  March 8, 2018